### TODD v. VICTORY et al. (No. 9453.)

(Court of Civil Appeals of Texas. Dallas. Dec. 5, 1925.)

**1. Contracts ⬦47—Written contract to answer debt, default, or miscarriage of another, not enforceable unless resting on sufficient consideration.**

A contract to answer debt, default, or miscarriage of another within Statute of Frauds, § 2 (Rev. St. 1925, art. 3995, § 2), and which is in writing as required by such statute, is not enforceable unless it rests on sufficient consideration.

**2. Frauds, statute of ⬦33(1)—That one assuming debt of another did so for beneficial consideration not of itself sufficient to remove case from statute.**

The mere fact that one assuming debt of another did so for a beneficial consideration does not of itself remove case from Statute of Frauds, § 2 (Rev. St. 1925, art. 3995, § 2), since he could have received such consideration and still have been only a surety or guarantor of original debtor.

**3. Frauds, statute of ⬦23(1)—Test in determining whether agreement within statute stated.**

Where it reasonably appears that, as between one sought to be held as new promisor by creditor for a debt and original maker of

debt, it should be paid by latter, new promisor is promising to answer for debt or default of another, and, unless agreement' is in writing, no suit can be maintained against such promisor.

**4. Frauds, statute of ⬥⟲23(1)—New promisor not answering for debt of another where it appears that original promisor should pay debt.**

Where it appears that, as between one sought to be held as new promisor by creditor for the debt and original maker of debt, former should pay debt, such debt becomes that of new promisor, and is not within statute of frauds.

**5. Frauds, statute of ⬥⟲159—Plaintiff's testimony held to make question for jury assumption of debt of another, bringing case without statute.**

In action to recover balance due on note, wherein defense was Statute of Frauds, § 2 (Rev. St. 1925, art. 3995, § 2), evidence that, pursuant to agreement between plaintiff and defendant, mortgaged property abandoned by defendant's son was turned over to defendant, who agreed to pay debt and retain possession of property and use it for his own benefit, *held* to make question for jury whether defendant assumed debt obligation of his son as his own, thus taking it out of statute of frauds.

Appeal from Hunt County Court; Olin P. McWhirter, Judge.

Action by M. R. Todd against Guy Victory and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Clark & Clark, of Greenville, for appellant.

Neyland & Neyland, of Greenville, for appellees. -

JONES, C. J. Appellant brought this suit in the county court of Hunt county to recover the balance due on a note in the principal sum of $675 against appellee Guy Victory, as the maker of said note, and J. C. Victory, on allegations that the latter assumed the payment of said note after its execution. At the conclusion of the evidence the court instructed a verdict in favor of appellees, the defendants in the court below, and a judgment was entered in conformity to this instructed verdict. The appeal challenges the correctness of the ruling of the court in directing the said verdict, on the ground that the evidence raised an issue of fact that required submission to the jury.

The pleadings and evidence of appellant disclosed that on April 22, 1923, appellant sold to appellee Guy Victory, a minor, and known by appellant to be a minor at the time, a span of horses, harness, wagon, plows, and other agricultural implements, and the crop on the land appellant had rented for the year 1920 as it existed on said date, and, in payment therefor, the said appellee executed his note for $675, and a chattel mortgage on all the property sold to him by appellant, and on the crop to be raised on the said land. Appellee J. C. Victory is the father of Guy Victory, and Guy Victory's home was with his said father. About three or four weeks after the execution of the note and the delivery of the said property, appellee J. C. Victory came to see appellant and told him that Guy Victory did not want the property and had left it with him, and stated that, if appellant would allow him (J. C. Victory) to keep the property, he would pay the note; that in consideration of this promise, appellant permitted J. C. Victory to keep the said property, and that from time to time J. C. Victory made payments on the note, which was deposited in a bank at Wolf City for collection; that at the time the suit was filed J. C. Victory had delivered to appellant the mortgaged property under a provision of the mortgage requiring same to be done if default was made in payment of the note, and that under such provision same was sold by him and credited on the note; that at the time the suit was instituted there was approximately $250 due on said note, exclusive of interest and attorney's fee. Guy Victory told appellant that he had turned the property over to his father about the time of the alleged agreement with his father. This property was used by J. C. Victory during the time he had it, and the testimony shows that it was property that would decrease in value from use.

Guy Victory defended the suit on the ground that he was a minor, near seventeen years of age, at the time he executed the note and mortgage, and was a minor at the time of the trial of the case, and refused to ratify the contract. J. C. Victory defended (1) on the ground that the alleged agreement between him and appellant was within the statute of frauds and not enforceable, and (2) on the ground that he never assumed the debt of Guy Victory, and that the payments made by him on the note were for the use of the property and not in discharge of the note. J. C. Victory offered evidence in support of his said defense. The trial court gave the instructed verdict in favor of Guy Victory, evidently on the undisputed evidence that he was a minor, and in favor of J. C. Victory, evidently on the theory that the evidence conclusively showed that whatever was the undertaking of J. C. Victory, it was a promise to answer for the debt or default of another, and therefore within the statute of frauds as such undertaking was not in writing.

Appellant having received back all of the property delivered to the minor defendant in the suit, the instruction in favor of such defendant was properly given. The only question for determination, therefore, is, Did appellant's testimony make a prima facie case removing his claim from section 2 of the

Statute of Frauds? By section 2 of article 3995, Revised Statutes 1925 (3965, 1911 Statutes), commonly known as our statute of frauds, it is provided that no action shall be brought in any court to charge any person upon a promise to answer for the debt, default, or miscarriage of another, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized.

[1] The application of this particular section of the statute of frauds to the facts of a given case has been a source of much conflict in decisions in the courts of this country. The decisions in our own state are not in entire uniformity on this question, for the reason that different rules for guidance have been announced by our higher courts. Some of these decisions announce the rule that, if there is a sufficient consideration passing between the creditor and the new promisor for his undertaking to pay the existing debt of another, the resulting agreement is not within the provision of said statute. Spencer & Co. v. Nalle & Co. (Tex. Civ. App.) 143 S. W. 991. This announcement of a test to determine the application of the said section of the statute cannot be accepted as a general rule of law to be applied in all cases arising under this section of the statute, for the effect of its application in many cases would be to repeal said section. It was not intended by the enactment of this section to alter any of the common-law elements of a valid contract, but only to avoid fraud and perjury by requiring a written contract or written evidence. It cannot be contended that a contract which is within this section of the statute of frauds, and which is in writing as required by such statute, would be enforceable unless it rested upon a sufficient consideration. Page on Contracts, § 1230.

[2] In the case at bar, the evidence of appellant clearly raises the issue of the assumption of the debt by J. C. Victory for a beneficial consideration. The original contract had been abandoned by Guy Victory and his rights thereunder made subject to immediate revocation by appellant. Under such condition appellant, as the mortgagee, had such interest in the mortgaged property as entitled him at once to secure its possession, and this he in fact did when, according to his testimony, he accepted J. C. Victory's proposition and permitted him to retain said property. J. C. Victory's subsequent holding of the property was not from any right he acquired from Guy Victory, but was from a right that could only have been acquired from appellant after Guy Victory's abandonment of his contract. The mere fact, however, that there was such beneficial consid-

eration passing to J. C. Victory as we have seen, would not, of itself, remove the case from said section of the statute, for he could have received this consideration and still have been only a surety or guarantor of Guy Victory. Muller v. Riviere, 59 Tex. 640, 46 Am. Rep. 291. Williston on Contracts, § 475, also clearly announces the same rule of law.

[3, 4] On authority of the case of Muller v. Riviere, supra, and Williston on Contracts, we announce the following rule as a guide to the construction of this said section of our statute of frauds under a given state of facts: When the entire transaction is considered, if it reasonably appears that, as between the one sought to be held as a new promisor by the creditor for the debt, and the original maker of the debt, it ought to be paid by the latter, the new promisor is, both on principle and in fact, promising to answer for the debt or default of another, and, unless the agreement is in writing, no suit can be maintained against such a promisor. If, however, the contrary appears as between the original promisor and the new promisor, the latter ought to pay the debt, such debt becomes in law that of the new promisor, and he is in principle and in fact answering for his own debt and not for that of another. This construction gives full force to said section of the statute, and at the same time protects a creditor whose agreement does not fall within the terms of said statute.

[5] What is the reasonable conclusion in this respect to be drawn from appellant's testimony? This testimony is to the effect that, if the mortgaged property, abandoned by Guy Victory, would be turned over by appellant to J. C. Victory, the debt would be paid by the latter. This offer was accepted, and appellant did permit J. C. Victory to retain possession of the property and to use same for his own benefit. As between Guy Victory and J. C. Victory, who should pay this debt? Manifestly, if the debt is paid by J. C. Victory under this agreement with appellant, it was the intention of all the parties that J. C. Victory, and not Guy Victory, would own the property, and, as between the two, the former should pay the debt. We therefore hold that appellant's testimony makes a case in which J. C. Victory assumed the debt obligation of Guy Victory, and that such assumption does not fall within the provision of said section 2 of the Statute of Frauds. This testimony is in conflict with the testimony given by J. C. Victory, and of course it is the function of the jury and not the court to determine this conflict.

It is the opinion of the court that the giving of peremptory instruction by the trial court was error, and that the case should be reversed and remanded.

Reversed and remanded.