For the errors above discussed, the judgment is reversed, and cause remanded.

PER CURIAM.
The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

■

**HIGGINBOTHAM–BARTLETT CO. v. DICKEY et al.**

No. 680.

Court of Civil Appeals of Texas. Eastland.
March 28, 1930.

Rehearing Denied April 25, 1930.

J. R. Stubblefield, of Eastland, for appellant.

Turner, Seaberry & Springer, of Eastland, for appellees.

FUNDERBURK, J.

Dr. J. H. Caton contracted with William Dickey for the latter to furnish the labor and material and construct a residence for the former. Dickey applied to Higginbotham-Bartlett Company to purchase the necessary

lumber and building material. That company made inquiry concerning the financial responsibility of Dickey, and before making any reply as to whether or not they would furnish the lumber and materials, went to Dr. Caton, and after some preliminary discussion, Mr. Cy Perkins, the agent and representative of the company, asked Dr. Caton the following question: "What I want to know is whether you will see that I get my money and hold back enough money to pay me for the material in case Dickey won't do it?" To this Dr. Caton replied: "Cy, I will see that you get every cent of your money, and if there is any suing to be done I will do it." Perkins then said: "That is exactly what I came up here for and what I wanted to see." To this Dr. Caton said, "All right." Thereafter, Higginbotham-Bartlett Company furnished and charged to said William Dickey lumber and materials in the aggregate sum of $4,361.26, of which $2,810.95 was paid, leaving a balance of $1,550.31.

Dickey failed to pay such balance, and Higginbotham-Bartlett Company filed this suit against William Dickey and Dr. J. H. Caton, seeking judgment against both for such balance. Plaintiff's pleading makes claim as against Dickey for the debt upon account, alleging that the lumber and materials were furnished him at his special instance and request, and alleging his promise to pay same, and failure to do so.

As a basis for fixing the liability of Dr. J. H. Caton, the original petition alleged: "* * * Plaintiff specifically asked the said Dr. J. H. Caton whether he (Caton) would see that the amount of lumber and material sold to the said William Dickey for the construction of said house was paid, provided the plaintiff would sell said lumber and material to the said William Dickey; that he, the said J. H. Caton, would guarantee and see that said account was paid, and that he would pay the same in the event the same was not paid by the said William Dickey."

Then followed allegations to the effect that such agreement was made prior to selling the materials to Dickey, which otherwise would not have been done, the default of Dickey, etc.

Dr. Caton pleaded the statute of frauds. Plaintiff filed another pleading styled "Reply to the original answer of Dr. J. H. Caton." This pleading does not purport to supersede plaintiff's original petition, nor is it complete without reference to such original petition. It is not thought that it adds anything material to the original plea. As to the agreement between plaintiff's agent and Dr. Caton, it alleges, "that said Dr. Caton then and there specifically and definitely told and stated to this plaintiff that if this plaintiff would sell and deliver to the said Dickey the lumber and material desired and needed for the construc-

tion of the said building, that in the event the said William Dickey failed to pay off and discharge any and all such obligations as might be incurred for said lumber and material which were thereafter to be used in the construction of said building for Dr. J. H. Caton that he, the said Dr. J. H. Caton, would personally see and guarantee that said bill for said lumber and material would be paid. That this plaintiff then and there stated to the said J. H. Caton that, relying on said assurance, plaintiff would sell and deliver to the said Dickey the lumber and material for the construction of said building for the use and benefit of the said Dr. Caton," etc.

The case was tried by the court without a jury. Judgment was rendered in favor of plaintiff against William Dickey for the amount sued for, but recovery against Dr. J. H. Caton was denied. From the judgment denying such recovery the plaintiff has appealed.

The trial judge, upon request, filed findings of fact and conclusions of law. No statement of facts accompanies the record. The findings of fact consist of detailed matters of evidence and not ultimate and controlling facts such as is contemplated by provision of R. S. 1925, art. 2247. There is no exception, however, to the findings of fact. It will serve no purpose to set out in detail the findings. It is sufficient to say that they support the allegations in the pleadings. To the extent that the findings in matters of detail go beyond the pleadings, the same may be treated as immaterial, since of course to whatever extent, if any, the same may show a basis for a recovery upon any other or different ground than that stated in the pleadings, no such recovery could be sustained.

The appeal presents but a single question, and that is whether or not the evidence, as comprehended within the pleadings, shows that the agreement between plaintiff and Dr. Caton was one consisting of a promise on the part of the latter to answer for the debt, default, or miscarriage of William Dickey within the meaning of R. S., 1925, art. 3995, subd. 2, requiring that such agreements be in writing. This question in turn, it is thought, is determinable by the further question of whether or not by the agreement Caton became primarily liable for the debt to plaintiff, and Dickey became either not liable at all, or only secondarily liable. It seems to be the position of appellant that since the promise of Caton was prior in time to the existence of the indebtedness owing by Dickey, and that the lumber and materials were furnished to Dickey because of and in reliance upon the previous promise of Caton that the statute of frauds has no application. But such a test does not seem to be determinative of the question. Mr. Williston, in discussing promises made prior to the creation of the

principal debt, after quoting Mr. Justice Story to the effect that if the point was entirely new it would deserve very great deliberation whether or not where the collateral promise (so-called) was a part of the original agreement and founded on a consideration moving at the same time between the parties, the statute should apply, or whether the statute should be confined "to cases where there was already a subsisting debt and demand, and the promise was merely founded upon a subsequent and distinct undertaking," further quoted the learned commentator, as follows: "It is now settled that a special promise within the statute may be made prior to or simultaneously with the creation of the principal obligation and may be offered as an inducement to the creditor to enter into a contract with the principal debtor." A long list of authorities is cited in support of the text. Williston on Contracts, § 461.

■ The question is further discussed by Mr. Williston in section 465 of the same work, wherein it is said that, although the fact that a promise is called by the parties a guaranty, that alone is not conclusive that the promise is not original, but that such is the natural meaning which will be given to the word if there are no controlling facts. It is said that the question is one involving the construction of the agreement, and that, "unless the determination of the matter depends solely upon the construction of a written contract the question should be submitted to the jury." The question presented, it is believed, may properly be determined by application of these principles. A part of the obligation was to "personally * * * guarantee" that the bill would be paid. The agreement was, then, in terms, a guaranty. There are no other elements of the agreement that tend to show that the nature of the obligation was misnamed. Dickey was held liable for the debt as shown both by the pleadings and the judgment rendered. Dickey was under contract with Caton to furnish the labor and material to construct the house. There does not, therefore, appear to have been any independent consideration in the way of personal advantage moving to Caton for his promise. We cannot say, as a question of law, that the agreement pleaded and as found by the court is an original agreement not within the statute as distinguished from a collateral agreement within the statute. This we would have to do, to be justified in disturbing the judgment of the trial court. If the evidence raised an issue of fact as to whether it was one or the other, then the trial judge trying the case without a jury must be deemed to have found the agreement was collateral. The appeal does not challenge the findings of fact, but only a conclusion of law. We at least cannot say that that conclusion was wrong.

In support of our construction of the agreement, it is thought that Housley v. Strawn Mdse. Co. (Tex. Com. App.) 291 S. W. 864, is directly in point. A part if not all of the debt in that case accrued after Housley made the agreement, which the Supreme Court held was within the statutes of frauds. There, as here, it was shown that the materials would not have been furnished but for the agreement.

See, also, South Spindletop Oil & Development Co. v. Toney (Tex. Civ. App.) 15 S.W. (2d) 688; Henger & Chambers v. Owen Lbr. Co. (Tex. Civ. App.) 17 S.W.(2d) 136.

It is therefore our opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.