## MUIL v. STEVENS et al.

### No. 8561.

Court of Civil Appeals of Texas. San Antonio. March 4, 1931.

Rehearing Granted and Judgment Reversed and Remanded April 29, 1921.

Rehearing Overruled June 3, 1931.

Lloyd & Lloyd, of Alice, for appellant.

Tarlton & Lowe, of Corpus Christi, and M. E. Jenkins, of Alice, for appellees.

SMITH, J.

This action was brought by Charles Muil against T. M. Stevens and Ed Stevens, brothers, to recover of the former the amount of two notes for the aggregate sum of $922.50, and of the latter upon his alleged parol obligation for the same amount, which represented the purchase price of a farm tractor sold by Muil and delivered to T. M. Stevens. Upon the trial judgment by default was rendered against T. M. Stevens for the amount of the notes, but a verdict was directed in favor of Ed Stevens, and from the resulting judgment Muil appealed.

As stated in appellant's brief: "The cause of action asserted by appellant against Ed Stevens is based upon allegations that the sale of the machinery was made upon the credit of said Ed Stevens and his promises, representations and agreement to pay therefor; that T. M. Stevens and Ed Stevens are brothers; that because of his wife's divorce suit against him said T. M. Stevens conveyed all his property to Ed Stevens in March preceding the time of the sale in August, 1927; that they had some understanding and agreement, unknown to appellant, whereby T. M. Stevens continued to work the farm on which the tractor and other machinery were to be and were thereafter used; that the farm was operated for their mutual benefit and that Ed Stevens was financially and otherwise interested in seeing said farm properly cultivated; that under the circumstances the sale was made without any cash payments and wholly upon the faith and credit of appellee, Ed Stevens; that he agreed to pay the purchase price of the tractor and plows a year from the sale; and judgment was sought against him for the purchase price of the machinery he agreed to pay."

Judgment was rendered in favor of Ed Stevens upon the theory that appellant's cause of action against him was shown by the evidence to be upon an oral promise to answer for the

debt or default of another, in contravention of the Statute of Frauds (subdivision 2, art. 3995, R. S. 1925).

The question to be determined in the case is that of whether appellee agreed, simply, to see that T. M. Stevens paid appellant the debt sued on, or whether, upon the other hand, he agreed outright to pay for the tractor, and thereby induced appellant to deliver it to T. M. Stevens. In the first event, the transaction would come within the prohibition of the Statute of Frauds, thereby relieving appellee of liability; in the second event, it would constitute an obligation enforceable against the promisor. The parties appear to agree that such is the law. They disagree upon the effect of the evidence to bring the case within or without the statute.

The question presented is one of fact, ordinarily determinable by the jury, in a jury case, as this was. The testimony was in sharp conflict as to the actual agreement. In such case, in testing the action of the court in directing a verdict, it is the duty of the appellate court to disregard the testimony of the favored party, and determine the question alone from the evidence in behalf of the losing party, giving such evidence its full effect, as if uncontroverted.

Appellant depends solely upon the testimony of his sales manager, T. A. Wickstrom, to establish the facts of his agreement with appellee, Ed Stevens. Upon this point Wickstrom testified on direct examination:

"I recall the occasion of the sale by the Muil Motor Company of a tractor involved in this suit. * * * We learned that Mr. Mose (T. M.) Stevens wanted a tractor * * *, but the case called for very unusual terms, no cash down as a part of the purchase price, those sales not being made by salesmen doing good business, so I came immediately to Alice to see Ed Stevens, we had had business transactions with Mr. Ed and found him all right and I didn't know Mose very much, in fact that was my first year in this section of the country. I talked to Ed about this transaction.

"I asked Ed if the deal would be all right and he said 'I will see it will be paid for and it will be all right.' In other words, in every way helped to make the deal come to a conclusion. We did not close right away and we wrangled along for I guess a week more, and I asked Mr. Ed again about it and he again insisted that it would be taken care of, the deal would be all right.

"On one occasion in the garage at San Diego I asked him if he felt the deal would be all right and he said he would see that it was all right, that it would be paid for; that happened in the garage at San Diego. * * *

"Before the notes were executed I recall coming to Alice and talking to Ed Stevens about it. I asked Mr. Ed what assurance we would have of getting our money because we didn't get anything down, and he told me he would see that the tractor would be paid for. We were giving them a year's time, until the next fall, I am quite sure."

On cross-examination the witness testified:

"The first conversation I ever had with Mr. Ed Stevens was possibly a week or ten days before the sale was consummated, before the notes were signed; I talked to him in Alice as well as San Diego. The first one I ever had with Mr. Ed Stevens was in Alice about ten days before the notes were signed; at that time I said he said he would see that it was paid.

"The second conversation I had with him I presume was possibly the day before the tractor was delivered, we lost no time making delivery, I think it was approximately the day before. * * *

"It is hard to recall whether those two occasions were the only two times I talked to Mr. Ed Stevens before the notes were signed or not. We worked over that matter for possibly ten days and it went over our mind every day until we felt convinced the deal was satisfactory."

On redirect examination he testified:

"When Mr. Mose Stevens first approached me to buy this tractor and give his notes and mortgage without any down payment, I did not accept his proposition; I did not deal with him. I came to Ed Stevens and talked to him; he and I talked over the possibility of making a sale of the tractor; I presume we talked a half an hour or an hour about the tractor. He said that he would see that it would be paid for.

"After talking with Mr. Ed Stevens then I again went and discussed the proposition with him the day before the transaction took place. The notes and mortgage were signed by T. M. Stevens; we felt that we ought to have the credit and responsibility of Mr. Ed Stevens behind this transaction before we made that delivery. I talked to both of them about that. He never denied that he would be responsible, never denied any liability at any time. We discussed the matter of who would pay for the tractor from morning to breakfast, every way, shape and form. He told me he would see that it was paid for, that he would pay for it, and as I stated, told me he would pay for it. * * *

"These two conversations that I have mentioned, one about ten days before here in Alice, the other a day or so before in San Diego, are the only two conversations that I can now definitely recall that I had with Mr. Ed Stevens about it. I cannot recall who was present. On both of these occasions, Ed Stevens said he would see that the tractor was paid for."

The witness further testified that he "never did ask Ed Stevens to sign these notes" of T. M. Stevens, and that: "I asked Mr. Ed Stevens about paying for this tractor subsequent to the sale; I asked him twice that I definitely recall and I am sure many other times. In those conversations he said he, Mr. Ed, would pay for this tractor and equipment as soon as he got the money, that he had a land deal pending and would get the money and pay it; he never disclaimed liability whatsoever."

We are of the opinion that this testimony is sufficient to establish no more than that appellant sold the tractor to T. M. Stevens, and took the latter's notes and mortgage in payment thereof, with Ed Stevens' collateral assurance that the tractor "would be paid for." The testimony was not sufficient to warrant a jury finding that Ed Stevens' obligation amounted to an original undertaking to pay for the tractor, which is the true test of his liability. It is true that the witness testified to an isolated instance in which Ed Stevens "told me he would see that it was paid for, that he would pay for it, and as I stated, told me he would pay for it," but throughout his testimony the witness, in restating and summarizing the agreement, stated repeatedly that Ed Stevens said, merely, that he would "see that the tractor was paid for." Appellant did not ask Ed Stevens to join T. M. Stevens in executing the notes for the purchase price of the tractor or the mortgage upon the tractor to secure those notes.

Upon the execution of these notes appellant delivered the tractor to the purchaser, T. M. Stevens, who has used it ever since to the exclusion of Ed Stevens. The whole record refutes the claim that Ed Stevens' agreement amounted to an original undertaking, or that his relation to the transaction was that of a purchaser rather than a guarantor in parol. We think the case is within the Statute of Frauds, and that the trial court correctly directed a verdict against appellant.

Each case of this character must stand or fall under the peculiar facts of it, and while the parties have cited and rely upon a number of cases, all much alike in general, this decision must still rest upon the peculiar facts of this case.

[1] Appellant complains of the ruling of the trial court in sustaining a special exception to an isolated allegation that shortly prior to the date T. M. Stevens conveyed his property to Ed. Stevens, the former's wife instituted an action to divorce him. We do not think this ruling, even if erroneous, was such as to materially injure appellant, or require reversal.

The judgment is affirmed.

### On Motion for Rehearing.

Upon further consideration on motion for rehearing, we have concluded that the evidence set out in the original opinion is such as to make a jury question of the issue of appellees' liability. That evidence, when construed most favorably to appellant as it must be, tends to show that appellant refused to deliver the tractor to T. M. Stevens until appellee agreed to pay for it, and was induced to part with it in reliance upon that promise. If a jury should resolve that issue in favor of appellant, it would entitle him to recover of appellee for the agreed purchase price of the tractor, or, as the case may be, for its reasonable market value.

Appellant's motion for rehearing is granted, and the judgment reversed and the cause remanded.