SHAHAN–TAYLOR CO. v. FOREMOST DAIRIES, Inc., et al.

No. 12180.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 11, 1950.

Rehearing Denied Nov. 8, 1950.

Davis & King, San Antonio, for appellant.

Walter Loughridge, Loughridge & Edwards, and Marion R. McClanahan, Jr., all of San Antonio, for appellee.

POPE, Justice.

This is a Statute of Frauds case relating to Article 3995, § 2, Vernon's Ann.Civ.Stats.

Shahan-Taylor Company, a partnership, sued Foremost Dairies, Inc., and L. H. Hoover, jointly and severally, for a balance of $7,664.56 claimed owing on an open account. At the conclusion of appellant's testimony both appellees urged motions for instructed verdict, and from a judgment sustaining their motions and denying plaintiff's recovery against either appellee this appeal has been prosecuted. Foremost's motion for instructed verdict stated specific grounds, but Hoover's motion stated no specific grounds, as required by Rule 268, T.R. C.P. Appellee Hoover has filed no brief.

Whether a prima facie case was made by appellant as to Hoover is the first inquiry in this cause. The proof showed that the partnership was in the wholesale feed business, that Hoover maintained a dairy herd and supplied milk to Foremost Dairies, Inc., and that during January of 1948 he made an application to appellant for credit. Invoices showing sales to Hoover supporting appellant's claim were received in evidence, and appellant Taylor testified that the feed was shipped out of his plant. Hoover testified that all feed set out in the petition was delivered, the account was substantially correct, and the price charged was the prevailing price and reasonable. He later testified, however, that certain items were incorrect. He admitted that he received and used the feed. Demand for payment was made upon Hoover on several occasions. The record is silent as to any express agreement on the price to be charged for the feed. This proof adequately proved the necessary elements for an implied sales agreement supporting appellant's claim against appellee Hoover. Marr-Piper Co. v. Bullis, Tex.Com.App., 1 S.W.2d 572; McDonald v. William Cameron & Co., Tex.Civ.App., 80 S.W.2d 1065; Johnson v. Gattegno, Tex.Civ.App., 267 S.W. 740; Masterson v. F. W. Heitmann & Co., 38 Tex.Civ.App. 476, 87 S.W. 227.

Appellant sought also to bind Foremost Dairies, Inc., and the proof supported by proper pleadings revealed these additional facts insofar as Foremost is concerned. According to appellant Taylor, during their first conversation in January, 1948, Hoover asked him to telephone Mr. A. R. Rees, local credit manager for Foremost Dairies; that upon doing this Taylor informed Rees that Hoover claimed he was operating a dairy for Foremost, whereupon Rees said: "Foremost Dairyland will pay the bill. I have the authority and am credit manager for Foremost Dairyland." The proof shows also that during this conversation Taylor sought credit information concerning Hoover. These transactions occurred before any feed was sent out. Taylor denied any discussion with Rees showing that Foremost's interest was only that of a mortgagee of the herd owned by Hoover. Taylor testified further that several days later Rees came to see him and then told him that Foremost owned the majority of the cows, was interested financially in the herd, and received all the milk produced by the herd. Taylor testified that Foremost's local manager, Mr.

Vanderpool, later told him that their Mr. Rees would take care of the account and that Vanderpool assured him very definitely that "Roy Rees had the authority as credit manager to pay the bill up." He again testified that the local manager told him that Rees "had full authority to take any action in respect to this account." Taylor testified also that at one point during these transactions Rees complained about the price of the feed, but then agreed to continue buying from appellant.

Hoover's recollection of the transaction with Rees was that "He would see that Dairyland paid the bill or Foremost paid it." Hoover denied that Foremost owned the herd and also that he ever told Taylor they did. He said that when he needed an advance of money, Rees was the one he talked to and that he always received the advance.

Upon Rees' request, bills were sent each two weeks to Foremost, attention Mr. Rees. It was shown that Foremost issued several checks payable to Hoover, marked "advance", which were endorsed over to appellant to apply on the account, and that on one occasion Hoover's endorsed check was retained by Foremost and delivered to appellant by Rees. Taylor testified that on this occasion Rees told him to "give them sixty days and Foremost would wipe the bill clean." Rees personally delivered many of the checks to Taylor. Other checks were mailed in Foremost's envelopes. Rees testified that on another occasion when Taylor pressed him for a $4,000 payment, that he said: "I could not authorize it."

The proof showed that the dairy was in the business of buying and selling milk, but, other than may be inferred from some of the above testimony, there is no proof that they produced it. The proof does show, however, that locally Foremost in the past had owned cattle, that it sold Hoover's original herd to him, and that it had advanced substantial funds to him to apply on the purchase of another herd. The proof showed that Hoover sold the milk to Foremost and received the full price for it.

The parties did business with each other for about six months, and during this period the dairy held various mortgages on at least a part of the dairy herd. Also during this period there was a milk shortage. During this period appellant sold, according to their account, $26,046.31 worth of feed and received in payment the sum of $18,381.75, leaving a claimed balance of $7,664.56. Continuously throughout these transactions appellant showed by the invoices that the feed was billed to L. H. Hoover, but some of the later invoices showed that either the original or a copy of the invoice had been sent to Foremost.

Appellee Foremost defended on the grounds that, (1) Article 3995, § 2, Vernon's Ann.Civ.Stats., prohibits such an oral agreement, (2) there was no consideration for an agreement between appellant and appellee Foremost, and (3) no person with authority for the Foremost Dairies, Inc., authorized the sale binding upon them. Appellant urges that the evidence was sufficient to raise jury issues.

■■ To say that a primary obligation escapes the prohibitions of Section 2 of the Statute of Frauds, and that a collateral obligation does not, states a simple rule, but the facts of this case illustrate how ineffective general rules may be when confronted with a particular set of facts. The real character of the legal relations arising from the facts of this case depends upon whether the parties, as appears from the entire transaction, intended a primary or collateral undertaking. Evans v. Shaw, Tex.Civ.App., 268 S.W. 1037; Bejil v. Blumberg, Tex.Civ.App., 215 S.W. 471. To determine this it is necessary to find the one to whom the credit was extended. Liebman v. Buell Lumber & Mfg. Co., Tex.Civ.App., 67 S.W.2d 1043; 20 Tex.Jur. 250; 37 C.J.S., Frauds, Statute of § 20, page 526. The words and expressions used by the parties, their acts and conduct, whether the words were used at the inception of the transaction or at some later time, the manner in which the seller carried the account on his books, the manner in which payments were made, the promisor's interest in the transaction, and all the surrounding facts and circumstances are properly considered to determine this intent. 37 C.J.S., Frauds, Statute of, § 285, pages 820, 822.

Unconditional and undisputed facts in many instances are enough to show, as a matter of law, either an oral, contemporaneous, unconditional promise to perform the obligation of a contract, on the one hand, or, on the other, that credit is given a debtor with another promisor as surety of guarantor, creating only a collateral agreement. Higginbotham-Bartlett Co. v. Dickey, Tex.Civ.App., 27 S.W.2d 248. Courts have often held as a matter of law that promises were secondary rather than primary, but these are cases in which the words used were so clear as not to be subject to any other meaning, such as an agreement to "guarantee" or to "stand good" for another's debt. Housley v. Strawn Merchandise Co., Tex.Civ.App., 253 S.W. 673, reversed on other grounds, Tex.Com.App., 291 S.W. 864; Muil v. Stevens, Tex.Civ.App., 39 S.W.2d 136; Fletcher v. Puckett, Tex.Civ.App., 170 S.W. 831.

Taylor's positive testimony concerning his conversation before any feed had been delivered, his and other testimony showing Foremost's interest in the transaction, and the testimony concerning complaints about the price on the part of credit manager Rees, are all met with contrary ideas as to the intent of the parties drawn from the meaning of the words used by the parties, and the fact that appellant on each invoice throughout the time of the transactions showed that Hoover was the person to whom appellant sold. The parties reach different conclusions from the facts which are disputed. They also arrive at opposite conclusions from the testimony about the mailing of duplicate bills to Foremost, the effect of Foremost's writing "advance" on the checks delivered to Hoover, and the practice of holding the checks for delivery to appellant or mailing them in Foremost's stationery.

Whether Foremost entered into a secondary and collateral agreement; whether it entered into an unconditional, independent agreement to pay appellant; or whether it entered into neither, were questions to be resolved by the jury from the preponderance of the evidence as they understood it. Gannaway v. Lundstrom, Tex. Civ.App., 204 S.W.2d 999; Higginbotham-Bartlett Co. v. Dickey, supra; Muil v. Stevens, supra; Todd v. Victory, Tex.Civ. App., 277 S.W. 705; Uvalde Nat. Bank v. Brooks, Tex.Civ.App., 162 S.W. 957; Davis v. Patrick, 141 U.S. 479, 12 S.Ct. 58, 35 L. Ed. 826; 99 A.L.R. 85; 49 Am.Jur. p. 424, § 72; 37 C.J.S., Frauds, Statute of § 290, pages 829, 832.

Appellant had the further burden of proving an agreement based on consideration. The consideration required to effect an agreement may vary with the nature and type of cases arising under the Statute of Frauds. The consideration required in cases where the facts show an antecedent debt may differ from that required where the debt arose contemporaneously with the undertaking. Hill v. Frost, 59 Tex. 25; Kollatt v. Clements, Tex.Civ.App., 3 S.W.2d 855; See Note, 40 L.R.A., N.S., 242. Because a "new consideration" is necessary in some cases and is an important factor, one may get the idea that a "new consideration" will lift an undertaking out of the statute, although it is oral and a secondary liability. On the other hand, one may think that without a "new consideration" in every case the undertaking is within the statute. Whether the debt is antecedent or concurrent, and the agreement oral or written, primary or collateral, under the common law there must be consideration in order to effect an agreement at all. 20 Tex.Jur. p. 223, § 14. The Statute of Frauds imposes the additional requirement that a collateral agreement be in writing. Hence, an oral collateral agreement, though with consideration, is within the statute. In the case of a preexisting debt, unless and until the proof shows that there is a new and independent undertaking and a new consideration, the statute applies. The consideration in such cases must be more than something in line with the promisor's "main purpose". Housely v. Strawn Merchandise Co., supra. In such a case, however, there is a primary agreement, not by reason of the new consideration alone, but also by reason of the new, unconditional and independent promise. Detroit Fidelity & Surety Co. v. Pippins & Clarkson, Tex.Civ.App., 47 S.W.2d 886. Appellant, however, makes no serious

contention that Hoover was the original debtor and that later Foremost contracted in some manner to pay either the antecedent or future debt. Moreover, as pointed out in appellee's brief, the facts show that sums were paid on the account at least equal to the debt incurred after the later discussions between appellant and Foremost. Therefore, this case presents only the problem of whether sufficient facts were proved to show an original contemporaneous promise, supported by consideration applicable to such a case. In such a case, where the promise is to pay for services to be rendered or goods to be delivered, the rendition of the services, or the delivery of the goods, on the credit of the promisor, constitutes a consideration in itself; and it is unnecessary to seek for any new and independent consideration. 99 A.L.R. 79–80; 37 Tex. Jur. p. 156, § 49.

From the facts above detailed, it is believed that appellant presented sufficient evidence to prove consideration. Dennison v. Gilmore, Tex.Civ.App., 71 S.W.2d 542; Liebman v. Buell Lumber & Mfg. Co., Tex. Civ.App., 67 S.W.2d 1043; Kinney v. Pearce, Tex.Civ.App., 65 S.W.2d 502; First Nat. Bank of Greenville v. Greenville Oil and Cotton Co., 24 Tex.Civ.App. 645, 60 S.W. 828; See Note, 15 L.R.A., N.S., 214.

Appellee Foremost also urges that the trial court properly disposed of the cause by instructing a verdict, because neither its credit manager nor its local manager had authority broad enough to make an agreement to purchase the feed. Appellant contends that these local authorities were clothed with all the powers incident to and usual in the dairy business, and that they had apparent authority to make the alleged agreement. A local or branch manager is limited in his authority to such contracts and acts as are incident to the management of that particular branch. He may, however, transact the ordinary and usual business of the branch office. Pittsburg Pipe & Supply Co. v. Federal Machine & Sup. Co., Tex.Civ.App., 107 S.W.2d 637; 2 Fletcher, Cyclopedia Corporations, § 670 (Perm.Ed.).

While it is recognized that a corporation's branch manager may not agree to use corporate funds to pay a bill, known to the creditor to be for a person in no way connected with the business, Pittsburg Pipe and Supply Co., supra; that a local manager may not make an outright purchase of an entire new business; Manhattan Liquor Co. v. Joseph A. Magnus & Co., 43 Tex.Civ.App. 463, 94 S.W. 1117 and that he may not enter into a guaranty agreement for the benefit of another and particularly is this so when the promisee is informed by the manager that he has no such authority; J. I. Case Threshing Mach. Co. v. Dallas Chamber of Commerce, Tex.Civ.App., 206 S.W. 206; yet one may gauge the agent's authority by tasks at which the principal has set him. Campbell Paint & Varnish Co. v. Ladd Furniture & Carpet Co., Tex.Civ. App., 83 S.W.2d 1095; Specia Plumbing & Hardware Co. v. Gulf Refining Co., Tex. Civ.App., 60 S.W.2d 478; Keystone Pipe & Supply Co. v. Milner, Tex.Civ.App., 6 S.W. 2d 771; 13 Am.Jur. 890.

Appellant has produced evidence showing it believed Foremost owned the herd and that its management incurred the debt as its own. While appellant failed to prove that Foremost owned the herd, it succeeded in raising an issue as to its belief, however mistaken it may have been. It is believed that the ownership of a dairy herd for milk production is not such an extraordinary and unusual situation, in the absence of notice to the contrary, as to require a holding that the purchase of feed for a dairy herd is beyond the authority of the local dairy managers. On the contrary, it is considered as a usual incident to a dairy. To support our view that it is not unusual, the evidence showed that at one time Foremost actually did own the original herd in question, that it sold the herd to Hoover after foreclosing on another person, and Foremost appeared as mortgagee of recorded mortgages on other herds. Certainly Foremost provided feed for the herd during the time they owned it. It is true that apparent authority cannot be established except by facts known to the party dealing with the agent and relied upon by

him in such dealing. Guaranty Bank & Trust Co. v. Beaumont Cadillac Co., Tex. Civ.App., 218 S.W. 638. It is significant, however, that appellant's contention as to its belief is borne out by actual facts, though unknown to it.

 From the nature of its business, Foremost's local management could incur such a debt for itself. The nature of the business empowered the local management with apparent authority to incur such a debt even for the benefit of Hoover, provided it is found that appellant in good faith believed the debt to be that of Foremost and it did not have notice otherwise.

The judgment of the trial court is reversed and the cause remanded.

W. O. MURRAY, C. J., and NORVELL, J., concur.