**WEST TEXAS PRODUCTION CREDIT ASSOCIATION, Appellant,**

v.

**HARDING CHEMICALS, INC., Appellee.**

No. 14519.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 19, 1966.

Rehearing Denied Nov. 19, 1966.

Naylor & Harrison, Pecos, for appellant.

Hill D. Hudson John P. Dennison, Pecos, for appellee.

BARROW, Justice.

Appellee, Harding Chemicals, Inc., brought this suit against appellant, West Texas Production Credit Association, to recover on an open account for insecticides applied on farms owned and/or operated by Paul Durckel. Judgment was entered for appellee after a jury trial. The primary question is whether appellant agreed to assume primary responsibility for this account, based on consideration sufficient to

remove its promise to pay Durckel's account from the Statute of Frauds.[1]

In Gulf Liquid Fertilizer Co. v. Titus, 163 Tex. 260, 354 S.W.2d 378 (1962), the Supreme Court, after full consideration of the difficulty presented in setting forth clear rules for determination of this question, recognized three tests to be considered: 1. Was there a promise of primary responsibility to pay, or was there a promise of suretyship? If the words used are not clear and are susceptible of more than one meaning, the question of intent to be primarily responsible for another's debt is one for the finder of facts, taking into account all the facts and circumstances of the case, including the words used by the promisor. 2. Was there sufficient consideration to support the promise to pay? There must be sufficient consideration to make any promise a binding and enforceable one. 3. Was the consideration such as to remove the promise from the Statute of Frauds? The "leading object" or "main purpose" rule is expressly adopted—that is, the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own.

West Texas Production Credit Association is an organization composed of farmers and ranchers in a five-county area engaged in the business of lending funds to finance farming operations. Harding Chemicals, Inc., sells and applies insecticides on farms in this area. Early in 1963, the PCA loan committee approved Durckel's application for two loans, aggregating over $100,000, to finance his 1963 cotton crop. The loans were secured by a chattel mortgage on the crop and equipment, as well as by a prior deed of trust on Durckel's land. These loans were based upon a proposed budget which included $8,000 for insecticides for the crop. In August an additional $19,000 was added to this loan for insecticides, due to heavy infestation of insects in that area.

In July, 1963, Durckel contacted Mr. Harding, president of appellee, and requested insecticides to be applied on his crop from time to time. Harding advised Durckel he would let him know that afternoon. In the meantime Harding contacted Mr. Gillespie, general manager of PCA, and this suit is predicated upon this and one subsequent conversation between these two parties who were the only witnesses at the trial.

Appellee's case is based upon the following testimony of Harding: "I asked him if he was financing Mr. Durckel and he said that he was. And I asked him if his financing was adequate for his insecticide program and he said it was. And I told him that I would apply these insecticides if I could look to him for my money; that I didn't want anything to do with Mr. Durckel, that I never had done business with him and didn't intend to do any. And that I was going to look to him for my money.

"Q All right. Did he give you assurance that you could look to him for your money?

A He did.

Q Did you rely upon that?

A Yes, sir, I sure did."

In response to direct questions asked him on several occasions, Harding testified that Gillespie never specifically stated that PCA would pay the account, but rather used words like: "We're going to put the money out," and "We're going to have to protect the money we've already got in this crop."

Subsequent to the above conversation, Harding notified Durckel that appellee would handle his insecticide program. Insecticides were applied on several occasions in July and August by appellee, as requested and directed by Durckel. The invoices were made out to Durckel without

---

1. Sec. 2, Art. 3995, Vernon's Ann.Civ.St., provides substantially that no action shall be brought in any court to charge any person upon a promise to answer for the debt, default or miscarriage of another unless the promise be in writing.

any reference to PCA, although Harding testified that statements went to PCA with copy to Durckel. On August 12, 1963, a check drawn on the Paul Durckel Farm Account and signed by him was mailed to Harding in a PCA envelope in payment of the July account. On September 10, 1963, a similar check signed by Durckel was sent in payment of the August account. Shortly thereafter Harding again contacted Gillespie to "thank him for the checks." Gillespie did not deny that the checks came from him.

Harding testified relative to this second conversation: "I asked him if he (Durckel) would be financed for the next month and he assured me that he was adequately financed." Again, he admitted that Gillespie did not specifically agree to pay the account, but in effect assured him that Harding would receive a check. He testified: "What it amounts to, he was going to see that I got my check just like I had the previous." Harding testified that in reliance on the assurance by Gillespie that the account would be paid, insecticides were applied on Durckel's farm on several occasions in September and October, as directed by Durckel. The invoices were again made out to Durckel. The account was not paid, and this suit was filed.

■ It is our opinion that a fact issue is raised as to whether PCA intended to be primarily responsible for Durckel's debt to appellee. Clearly this was the intention of Harding. On the other hand, the facts and circumstances would support a conclusion by the jury that Gillespie intended for appellee's account to be paid by Durckel from the funds which PCA loaned to Durckel for payment of all obligations incurred in raising his 1963 cotton crop. Gillespie denied any promise to be primarily liable. This disputed fact issue should have been submitted to the jury for its determination. Gulf Liquid Fertilizer Co. v. Titus, supra;

Shahan-Taylor Co. v. Foremost Dairies, Tex.Civ.App., 233 S.W.2d 885, wr. ref. n. r. e.

■ An issue presenting this controverted fact was not submitted to the jury. This case was submitted to the jury, over appellant's objections, in the form used for submission of a fraud case. The jury found substantially: 1. PCA represented in advance to Harding that it would pay Harding for the insecticides applied upon Durckel's cotton crop for the months of September and October. 2. Harding relied upon such representation. 3. Harding applied such insecticides in reliance upon such representation. PCA objected to these issues as not being ultimate issues. It also requested issues as to whether PCA agreed it would pay Harding for the debt of Durckel and if PCA intended to be primarily responsible for Durckel's debt. These issues, which are in substantially the form suggested by Titus and Shahan-Taylor Co., were refused.

It cannot be said from this record that Harding, as a matter of law, has established that PCA intended to be primarily responsible to appellee for the application of insecticides to Durckel's crop. Nor did appellee meet its burden by securing a jury finding to this effect. In view of PCA's objection to the form of issues as erroneously submitted, as well as by its tender of issues in substantially correct form, there is no basis for remand of the case. Cf. Scott v. Liebman, 404 S.W.2d 288 (Tex. 1966). This leaves PCA's promise within the Statute of Frauds. It is therefore unnecessary to consider whether such a promise was made by PCA for the main object of subserving some purpose of its own.

The judgment of the trial court is reversed and here rendered that Harding Chemicals, Inc., take nothing by its suit against West Texas Production Credit Association.