**N. A. BOYD and Nasa Grill, Appellants,**

**v.**

**LEASING ASSOCIATES, INC., Appellee.**

**No. 16306.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 7, 1974.

Rehearing Denied Dec. 5, 1974.

Gallman, Bakke & Schiwetz, O. Otis Bakke, Houston, for appellants.

Hicks, Hirsch, Glover & Cochran, Iris Hefter Robinson, Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit to recover the balance due under an automobile lease agreement secured by a continuing guaranty agreement. A judgment was entered for the plaintiff after a trial to the court without a jury.

No findings of fact or conclusions of law were filed.

N. A. Boyd and H. Nordstrom entered into the restaurant business under the name "Nasa Grill" as a partnership venture. On January 19, 1966 "Nasa Grill, a Partnership" leased a 1966 station wagon from Leasing Associates, Inc. and in connection therewith entered into a written lease agreement which was executed for the partnership by Nordstrom. As a part of this agreement N. A. Boyd signed what it entitled a "Continuing Guaranty." By this instrument he undertook to guarantee the payment of "each and every claim, demand, indebtedness, right or cause of action against the Lessee named in the above lease now or hereafter existing. . . . This is a continuing guaranty and all extensions of credit and financial accommodations concurrently herewith or hereafter made by Associates to the Lessee shall be conclusively presumed to have been made in acceptance hereof."

Boyd furnished the initial capital for the partnership and Nordstrom operated the business. There was an agreement that the profits would be divided equally between them. An assumed name certificate was properly filed. The business did not prosper and sometime in 1966 the partnership was dissolved by mutual agreement. At the time the partnership purchased this business from Pancake Kitchens, Boyd paid them $15,000.00 and agreed to assume a note which Pancake Kitchens owed to the Webster State Bank. They also assumed the obligations of Pancake Kitchens under a lease for the premises from Friendswood Development Company.

At the time of the dissolution of the partnership between Nordstrom and Boyd, Mr. Leon Horne approached Mr. Boyd and suggested that he would like to run the grill. It was agreed between Boyd and Horne that Horne would operate the business, make the payments on the notes and the lease for which the partnership was liable. All profits which the business generated, after payment of these fixed expenses, were to go to Horne. There was no agreement on the part of Boyd that he would share either the profits or the losses incurred in the operation of the business by Horne. When Horne took over the operation of the business Boyd asked Horne if he wanted to take the station wagon too. Horne stated that he would like to have the car and agreed to pay the monthly lease payments. Horne operated the restaurant for more than a year, during which time he made the monthly lease payments directly to Leasing Associates, Inc. On November 22, 1966 a payment on the leased vehicle was past due, and Leasing Associates sent a letter demanding payment by certified mail. The return receipt for the letter was signed by Leon Horne.

The lease agreement provided that the term for each vehicle leased was to commence on the date the vehicle was delivered to the lessee and would continue thereafter for so long a term as the lessee desired until final adjustment of rentals was made as provided in the lease. Horne made the payments on the lease agreement by checks on an account in the name of Nasa Grill. In 1968 Horne agreed with Ted L. Eubanks, the credit manager of Leasing Associates, on the terminal value of the station wagon. On May 10, 1968 Horne gave Leasing Associates the check in settlement of the station wagon account. This check was returned but payment was finally made on June 17, 1968, and title to the station wagon was transferred by Leasing Associates to Nasa Grill. On May 10, 1968 Horne leased a 1968 model Chevrolet truck. Thereafter on July 25, 1968 Horne leased a 1968 Ford pickup truck. The Chevrolet truck had a cab and chassis with a 14-foot bed. These transactions were carried out by instruments entitled Exhibit "A" to Lease Agreement No. 59805-01—between Leasing Associates Inc. and Nasa Grill dated January 13, 1966. The instrument contained in addition to a description of the trucks the rental charges, the reserve charges, the agreed value,

delivery date, the delivery point and other information. It then provided: "It is agreed and accepted by Leasing Associates, Inc. and Nasa Grill, Lessee, that all of the rights, obligations, terms, conditions and covenants of the above described lease agreement are incorporated by reference and made a part hereof for all purposes." Each of the agreements was then signed "Nasa Grill, Lessee, By Leon Horne."

After a period of a few months Horne became delinquent on his payment and eventually the two vehicles were repossessed by Leasing Associates and sold at auction. On June 9, 1970 Leon Horne signed a promissory note payable to Leasing Associates, Inc. in the sum of $6,999.89 payable December 1, 1970.

Leasing Associates, Inc. sued Leon Horne, N. A. Boyd, and Nasa Grill, a Partnership. The corporation alleged the execution of the master lease dated January 13, 1966 and that the defendants defaulted in making the payments required by said lease. A copy of the lease was attached and was shown to have been executed by Nordstrom on behalf of Nasa Grill, a Partnership. Attached to the instrument were three exhibits each labeled "Exhibit A" describing the station wagon and the two trucks. The continuing guaranty agreement was printed as part of the master lease agreement and is shown to have been executed by N. A. Boyd. They alleged that there was due under the lease contract the sum of $6,999.89 and prayed for a judgment in this amount together with reasonable attorney's fees. They also alleged that on June 4, 1970 Leon Horne, "a partner in Nasa Grill," executed a promissory note payable to the corporation in the sum of $6,999.89. It was alleged that this note was past due in that the defendant Leon Horne had failed to pay the same although demand had been made of him to do so. They also alleged that N. A. Boyd was jointly and severally liable with Leon Horne for the amount of the note because of the continuing guaranty agreement. Boyd for himself and the partnership denied

under oath that Horne was a partner in the partnership called or known as "Nasa Grill." He also denied under oath that Horne had authority to execute the written instruments on behalf of the partnership.

There is no evidence that Horne was associated with the partnership that entered into the original master lease agreement. The uncontroverted evidence establishes that his first relationship with Nasa Grill began after the dissolution of the partnership between Nordstrom and Boyd. Immediately after Nordstrom severed his connection with the business, Horne took over the operation of the business under a contract with Boyd. Neither Horne nor Nordstrom was present at the trial and their testimony was not produced. Boyd's testimony was to the effect that Horne agreed to make the payments on the leases and certain notes in return for the privilege of operating the business. He testified that Horne would be entitled to all of the profits of the business if there were any. There was no agreement to share either losses or profits, as such. There is no evidence that Horne was a partner authorized to incur indebtedness in the name of Nasa Grill, a Partnership.

■ Dissolution does not terminate a partnership; the relationship continues during the winding up period. Howell v. Bowden, 368 S.W.2d 842 (Tex.Civ.App.— Dallas 1963, writ ref. n. r. e.). A partnership continues as to third persons who deal with the members thereof as partners until due notice of dissolution is given. 68 C.J.S., Partnership, Sec. 364.

■ The corporation contends that Horne was the apparent agent of the partnership. It cites Lloyds Casualty Insurer v. Farrar, 167 S.W.2d 221 [Tex.Civ. App. 1942, aff'd, 141 Tex. 497, 174 S.W.2d 302 (1943)], for the proposition that "An apparent agent is one that the principal either intentionally or by want of ordinary care induces third persons to believe is his agent although neither express nor implied authority has been conferred." A

presumed finding by the trial judge that Horne was an apparent agent of the partnership is supported by the evidence. Boyd as the liquidating agent for the partnership permitted Horne to continue the business under the same name. He authorized Horne to make payments on the partnership debt to Associates. He failed to notify Associates that the partnership had been terminated.

Associates contend that Boyd is estopped from denying that Horne possessed the authority necessary to bind Nasa Grill and himself as owner. Associates relies on Wewerka v. Lantron, 174 S.W.2d 630 (Tex.Civ.App. 1943, writ ref., w. o. m.). This case defines apparent authority as follows:

> " 'By apparent authority is meant such authority as a reasonably prudent man using diligence and discretion in view of the principal's conduct, would naturally and reasonably suppose the agent to possess'. . . .

> 'Apparent authority is based on estoppel and can arise but from two sources: First, the principal may knowingly permit the agent to so hold himself out as having such authority, and in this way the principal becomes estopped to claim that the agent does not have such authority . . . . Second, the principal may so clothe the agent with indicia of authority as to lead a reasonably prudent person to believe that he actually has the authority.' "

■ Certain other legal principles are applicable to this case and must be recognized. One seeking to charge a principal through the apparent authority of an agent to bind the principal must prove such conduct on the part of the principal as would lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise. Chastain v. Cooper & Reed, 152 Tex. 322, 257 S.W.2d 422 (1953).

■ Where actual authority does not exist, apparent authority or estoppel cannot be established except by facts known to the party dealing with the agent and relied upon by him in such dealings. Guaranty Bank & Trust Co. v. Beaumont Cadillac Co., 218 S.W. 638 (Tex.Civ.App.—Beaumont 1920, writ dism'd); Shahan-Taylor Co. v. Foremost Dairies, Inc., 233 S.W.2d 885 (Tex.Civ.App.—San Antonio 1950, writ ref. n. r. e.). A contract made for the firm's benefit is binding on the partnership even though executed in the name of one partner only. However; a transaction with a partner that is outside the scope of the partnership enterprise is deemed personal to him, even though the use of the firm name led the other party to believe he was dealing with the partnership. 44 Tex.Jur. 2d, Partnership, § 70, p. 397. The partnership would not be liable on the note or the leases executed by Horne merely by reason of the fact that he was an agent in the absence of evidence that these transactions were within the scope of the partnership business. True v. Gettler, 256 S.W.2d 958 (Tex.Civ.App.—El Paso 1953, writ ref.).

Mr. Ted Eubanks was the only witness called by Leasing Associates who was employed by that company at the time Horne leased the trucks. He testified that he was the credit manager for Leasing Associates and that in 1966 the Nasa Grill account came to his attention because it was past due. At that time he discussed the account with Mr. Horne and eventually secured a check from Leon Horne for the terminal value on the leased vehicle and assigned the title to Nasa Grill. He testified that there was some problem with the collection on the first unit; that there were some past due situations on the rentals, and that the proceeds check to pay off that lease was returned because of insufficient funds. He had never discussed the state of the account on the first unit with Mr. Boyd. The truck leases were negotiated by a salesman, but they were approved by him since he had dealt with Mr. Horne and Nasa Grill on

the previous item. He testified that Leon Horne ran Nasa Grill. "He paid us checks in that name; we issued the title to the station wagon to Nasa Grill and delivered it to him." The trucks were delivered to Horne at Nasa Grill. He knew that Nasa Grill was a small restaurant and seated no more than twenty-five or thirty people. He never questioned why a small business of that nature would need a 2-ton truck. He testified he really didn't know who made the payments on the account because he didn't see the checks unless they were returned insufficient.

Norman Boyd testified that Mr. Horne had authority to buy food and beverages on behalf of the grill. That he had no authority to buy equipment unless he could have paid for it in cash. Boyd testified that he never guaranteed any accounts established by Leon Horne. He testified that he loaned him some money and went on some notes for him. He testified that the first time he knew that Mr. Horne had some trucks was after he had gone into the fish business. He did not inquire as to where he had gotten the trucks, but he knew that he had gone into a trade with Mr. McCullough from McCullough Tool Company to raise fish in some lakes owned by Mr. McCullough. If the trucks were ever used in connection with Nasa Grill he did not know about it. He did not know that the trucks were being leased under the vehicle lease agreement of 1966 until about the time the suit was filed. Leon Horne had authority to sign checks on the Nasa Grill account at the Webster State Bank. Mr. Boyd had authority to sign checks on that account also. Mr. Horne operated Nasa Grill in about the same way that Mr. Nordstrom had done it.

While Mr. Eubanks testified as to some knowledge of the manner of operation of Nasa Grill, there is no evidence that he acquired this knowledge prior to the time the two trucks were leased. The only specific contact with Nasa Grill that he recounted in his testimony was the one occasion when he wrote a letter to Nasa Grill in a collection effort. There is testimony, however, that after the trucks were purchased and the contract became in default he was in contact with Mr. Horne on a day-to-day basis. He testified that he personally saw Mr. Boyd one time and probably had five or six phone calls with him; that he discussed the past due condition of these trucks with him and explained to him that if the trucks were repossessed there would undoubtedly be a deficiency on the leases and that he would be looking to Boyd and Horne jointly for the deficiency. He testified that on one occasion he told Mr. Horne that he wanted him to get in his car and they would go and get the trucks. At that time Horne told him to wait a minute and let him run over and see Mr. Boyd. "I think maybe he will loan me some money to pay off these accounts." He went to Mr. Boyd and Mr. Boyd then called Eubanks and asked what the situation was because Leon was over there to get some money. Mr. Boyd told him that he would send him $500.00 if he would hold off. In this connection Mr. Boyd testified that Mr. Horne asked him to loan him $500.00 to pay on the lease contract; that at that time he did not know that the station wagon was paid for; that he called Mr. Eubanks and Mr. Eubanks told him that he would hold off foreclosure if he received a $500.00 payment; that he loaned Mr. Horne the money but made the check payable to Leasing Associates; that he gave the check to Mr. Horne who took it to Mr. Eubanks.

 .There is no testimony that Mr. Horne represented himself to be a partner in the original partnership. The only evidence that he represented himself to be an agent of that partnership is the fact that he signed the lease amendments "Nasa Grill" followed by his signature. The only previous transaction that Mr. Horne had with Leasing Associates was the payments on the station wagon which he made, and negotiations with Associates on the payoff for the station wagon. There is no evidence that Mr. Boyd knew of these negotiations. There is no evidence that the

purchase of trucks was within the scope of the partnership business. There is no evidence that Mr. Boyd knew that Mr. Horne had acquired title to the station wagon, or that he was negligent in failing to know of this purchase by Mr. Horne. If it be conceded that there is some evidence that Leasing Associates knew that Mr. Horne was managing and operating Nasa Grill, we do not consider that the authority of one as manager of a small restaurant would amount to a holding out of that manager as being authorized to purchase trucks. It is a general rule that an agent's authority is presumed to be co-extensive with the business entrusted to his care. He is limited in his authority to such contracts and acts as are incident to the management of the particular business with which he is entrusted. There is no evidence that the trucks were needed for, or used in, a small restaurant such as Nasa Grill. Jarbe Oil Company v. Birdwell & Son Drilling Co., 335 S.W.2d 394 (Tex. Civ.App.—Eastland 1960, writ ref. n. r. e.); Shahan-Taylor Co. v. Foremost Dairies, Inc., 233 S.W.2d 885 (Tex.Civ.App.—San Antonio 1950, writ ref. n. r. e.).

■■■■■ The authority of an agent to execute a promissory note in behalf of his principal, and make it a binding obligation on him, may be implied when the exercise of such authority is so necessary to the accomplishment of the agency that the intent of the principal to confer it must be presumed in order to make the power of the agent effectual. Turner & Company v. Graham Gin Co., 75 S.W.2d 955 (Tex. Civ.App.—Eastland 1934, n. w. h.). It is neither proper, usual, nor necessary to the exercise of the authority granted Horne by Boyd that he execute a note to Associates in the amount of the deficiency. This note was signed by Horne in his individual capacity and does not purport to be an obligation of the partnership. There is no evidence that Horne was authorized by the partnership to execute the note as a partnership liability. Insofar as the judgment of the trial court runs against the partnership and Boyd, it cannot be supported on the basis that the trial court made a presumed finding that the note represents an obligation of the partnership.

We find no evidence of such conduct on the part of Mr. Boyd as would lead a reasonably prudent person, using diligence and discretion, to suppose that Horne had the authority to purchase two trucks for the partnership business. Particularly, we find no evidence that Associates used diligence and discretion in ascertaining the extent of Horne's authority.

■■■ Since this is a case tried to the court without a jury in which no findings of fact were filed, we must presume that the trial court resolved every disputed fact issue in favor of the winning party, and consider only the evidence which supports the judgment, disregarding all evidence in conflict therewith. In applying this rule, however, we have found no factual basis to support essential elements of the cause of action alleged. Burns v. Gonzalez, 439 S.W.2d 128 (Tex.Civ.App.—San Antonio 1969, writ ref. n. r. e.); Midsig Corporation v. Dickson, 271 S.W. 654 (Tex.Civ. App.—El Paso 1925, n. w. h.).

The cause of action of Leasing Associates, Inc. against N. A. Boyd and Nasa Grill, a Partnership, is severed from that alleged against Leon Horne. The judgment as to N. A. Boyd and Nasa Grill, a Partnership, in favor of the plaintiff, Leasing Associates, Inc., is reversed and judgment is here rendered that Leasing Associates, Inc., take nothing against N. A. Boyd and Nasa Grill. The judgment against Leon Horne is not disturbed.