UNITED STATES COLD STORAGE CO. v. RICHARDS.

No. 13446.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 13, 1936.

Rehearing Denied Dec. 18, 1936.

Smithdeal, Shook, Bowyer & Lefkowitz, of Dallas, for appellant.

P. G. Peurifoy and Ben C. McKinney, both of Dallas, for appellee.

BROWN, Justice.

At the outset, we are confronted with a motion on the part of appellee to dismiss the appeal on the ground that appellant's motion for a new trial was overruled on July 31, 1935, but that the order overruling same was not entered on the minutes of the trial court until August 31, 1935, and, the appeal bond having been filed on August 19, 1935, same was prematurely filed, and cannot support the appeal.

If appellee's contention is correct, we have no jurisdiction, and the motion to dismiss is well taken.

But we cannot agree with appellee, and feel that the motion must be overruled.

The record discloses that the order of the trial court overruling the motion for a new trial is actually dated July 31, 1935.

It further appears that the district clerk has made a notation on the margin of the

court's order, "Entered August 31, 1935." This marginal notation must of necessity mean that on August 31, 1935, the clerk entered the order in the minutes of the trial court.

We know of no provision of law requiring such an order to be filed by the clerk of the trial court. We know of none requiring the clerk to enter such an order in the minutes at any given time.

■ We hold that, when the trial judge actually signed the order overruling the motion for a new trial on July 31, 1935, the right to appeal from such accrued to the appellant at such time, and that his rights could not be either affected, or denied, by any failure on the part of the clerk to actually enter the order in the minutes until after he perfected his appeal by filing an appeal bond.

Common sense and common justice dictate such a conclusion on our part.

To hold otherwise makes the right of appeal by a litigant, from an order overruling a motion for a new trial, actually made and signed by the trial court, depend upon the diligence of the clerk in entering the order in the minutes before the appeal bond is filed, or upon his honesty of purpose in dealing with such order, in such designated time.

It is too evident for argument that, should such be the law, either a dishonest clerk or a negligent clerk, or even a clerk whose office is flooded with orders and judgments, and who just happens to enter the order in his minutes one day after a proper appeal bond has been filed with him, could defeat the litigant's right of appeal.

Suppose the clerk had mislaid the order and, upon requesting a transcript, it was disclosed that the order was not in the minutes, could it be successfully contended that it could not be then copied in the minutes and incorporated in the transcript? Common sense and common justice answer "No."

■ We even care to go a step further. If, after the transcript were prepared and delivered to appellant and actually filed in this court, he discovered the omission, he could by motion to perfect the record, cause the clerk of the trial court to enter the order in the minutes, furnish him with a certified copy, and bring the same before us to perfect his record and show his right to be heard on appeal.

We are cited to Gilmore v. Ladell (Tex. Civ.App.) 34 S.W.(2d) 919 (writ refused), but in that case it is not made to appear that the trial court signed an order overruling the motion for a new trial on the date the motion was overruled. Furthermore, the appeal was taken on a pauper's oath, and the oath was not filed within the time provided for in the statute after the order was made in. open court. We have no way of knowing that the Supreme Court considered the conclusions reached by the Court of Civil Appeals save the one which points out the lack of jurisdiction of the appeal because the pauper's oath was not filed within twenty days after the motion for new trial was actually overruled. We are of opinion that this feature of the case moved the Supreme Court to deny the writ.

Suffice it to say, we decline to follow the opinion which deals with the issue of want of jurisdiction because the appeal bond was filed before the clerk actually copied the order overruling the motion for a new trial in the minutes. We do not believe that such pronouncement in the Gilmore Case, supra, is the law, and we so hold.

It follows that the motion to strike appellant's assignments of error is not well taken.

This suit was brought by appellee, Richards, against appellant, United States Cold Storage Company, a private corporation, and Leftwich Marketing Company, a private corporation, to recover judgment jointly and severally against both corporations for the breach of an alleged oral contract to purchase and pay for 10,000 crates of onions at $1 per bushel crate.

The allegations assert that 75 cents per bushel was agreed to be paid upon delivery and the remaining 25 cents later on; that 5,000 bushels were actually delivered and only 75 cents per bushel paid, and recovery is sought for the unpaid 25 cents per bushel. They further assert that appellant refused to take the remaining 5,000 bushels of onions; that appellee was forced to sell same at 60 cents per crate, and he prays for recovery for 40 cents per crate loss as well as $491.40 storage charges alleged to have been incurred.

Leftwich Marketing Company made no answer, and appellant answered, among other contentions, that it made no such contract; that no person authorized to do so made any such contract for it; that it had a written contract with Leftwich

Marketing Company whereby it undertook to store onions purchased by such marketing company and to advance for said company 75 cents per bushel on purchases made by it and stored with appellant, under certain conditions whereby appellant was to be secured for the making of such advancements; that the debt arising out of the transaction with appellee Richards was the Marketing Company's debt, and, if any attempt were made to bind it to pay such debt, the transaction, not being in writing, was unenforceable as being within the statute of frauds.

Appellee replied that the contract to purchase "was made by one C. L. Moss, an agent and employee of the United States Cold Storage Company who was at the time acting in the course of his employment"; and further that, if Moss did not have the actual authority to make the contract, he was the manager of appellant's Dallas branch, and as such "was placed in a position where the ordinary business man of prudence would assume that he had the actual authority to make such contracts as were necessary for the purpose of carrying on and transacting business that might come to him in behalf of his principal," and that appellant is estopped to assert that Moss had no such authority; that appellant, through Moss, had made similar contracts with other persons; that appellant accepted the benefits of the contract made by Moss and has ratified his actual or apparent authority.

The cause was tried to a jury and four special issues submitted: (1) Did appellant and Leftwich Marketing Company jointly agree to purchase from appellee 10,000 crates of onions at $1 per crate? Answer "Yes." (2) "Do you find and believe from a preponderance of the evidence that C. L. Moss, at the time in question, had apparent authority, as that term is hereinbefore defined to you, to enter into the contract in question, as manager of the said United States Cold Storage Company?" Answered "Yes." The definition is: "By 'apparent authority' as that term is used in this charge is meant such authority as a reasonably prudent person, using diligence and discretion, in view of the principal's conduct, would naturally and reasonably suppose the agent to possess". (3) Did appellee rely upon such apparent authority on the part of Moss? Answered "Yes." (4) Did Leftwich Marketing Company alone agree to purchase the onions? Answered "No."

Appellant moved for judgment, and its motion was denied. Appellee moved for judgment, same was granted, and judgment rendered as prayed for in "the sum of ($4393.51) Forty Three Hundred Ninety Three and 51/100 Dollars (same being $3739.16) principal with interest from August 1, 1932, at the rate of 6% per annum, amounting to ($654.35) jointly and severally, together with 6% per annum interest thereon from date of judgment, July 31, 1935, and all costs of suit, for all of which let execution issue."

Motion for a new trial being overruled, the cause was appealed to the Court of Civil Appeals at Dallas and was by the Supreme Court transferred to this Court of Civil Appeals.

Taking the view that we do in this case, there are a number of errors apparent in the record which we will not discuss.

It is evident that appellee relies for recovery against appellant on the theory of "apparent authority" of Moss.

The fact of mere existence of the relation of principal and agent does not serve to establish any authority further than such as is necessary to discharge the duties ordinarily belonging to the agency. 2 Tex.Jur. p. 423.

The very name of the principal, a corporation, here sought to be held—United States Cold Storage Company—puts the world on notice that it is engaged in the cold storage business. Appellee frankly admitted that he knew appellant was in the cold storage business. His testimony shows that every transaction he has had with appellant, heretofore, was that concerning cold storage, and his testimony concerning its engaging in the business of buying products was wholly limited to dealings with two or three persons whom he knew as sellers of produce, and, when the facts of these transactions were developed, they showed no purchases. In fact, although he relied, in his pleadings, on these two or three transactions, to show the agent's apparent authority, when the facts began to develop and he was asked if his contract was similar to those he said he relied upon, appellee was unwilling to place his contract on a parity with the others.

Truth is, appellee never at any time testified that Moss agreed to purchase his onions for his principal. This is the extent of his testimony:

"Q. What was the conversation then when Moss was there? (Appellee was testifying to a conversation had with Moss and the representative of Leftwich Marketing Company—the company who had been trying to buy onions from him). A. Moss came and said he would pay for the onions as they came into the cold storage company at $1.00 a crate.

"Q. He didn't say he would buy from you 10,000 bushels of onions? A. He would pay for them, I suppose that is buying them.

"Q. He never told you that he would buy them from you? A. A Man comes along and says, 'I will give you a dollar a crate', that's buying, isn't it?

"Q. Didn't he tell you this: That he had a contract with the Leftwich Marketing Company to store onions for them and was going to finance them seventy-five cents a crate on any onions brought there? A. I don't remember that.

"Q. You billed them to the Leftwich Marketing Company in care of the Cold Storage Company? A. Under his direction."

He further testified that he drew on appellant for only 75 cents per crate.

Appellee was dealing with and through the F. & M. State Bank of Rowlett, Tex., and it is undisputed that he authorized the cashier of such bank to handle his shipments and drafts. One of the letters written by the cashier, Neal, serves to show what the transactions actually were:

"United States Cold Storage Co.,

"Dallas, Texas.

"Gentlemen: You are advised that Mr. J. C. Richards has shipped and is today drawing on you *for account of the Leftwich Marketing Company* (italics ours) two cars of onions from Rockwall and one car of onions from Sachse, car numbers and contents as follows: * * *

"Please pay these drafts when presented."

It is undisputed that appellant had a written contract with Leftwich Marketing Company to store its onions, and to advance 75 cents per crate on them, until a certain amount had been received for storage.

All of the evidence corroborated the testimony of the witness Moss, who was not connected with appellant, when the trial was had, that he never at any time bought the onions; that he had no authority to buy them; that he was carrying the contract made with Leftwich Marketing Company; that he talked to appellee in the presence of the representative of the Marketing Company, to explain to appellee the arrangements he had made to finance the purchases made by the Marketing Company; and that United States Cold Storage Company was not buying products, but was in the business of storing them.

In this case, there is no foundation in the facts for the application of the doctrine of apparent authority of the agent, and, under such circumstances, one dealing with the agent is bound to have a knowledge of the agent's authority, and only such authority may be implied as is reasonably necessary and proper to carry into effect the actual power conferred. 2 Tex.Jur. p. 423, 424; Thompson v. Keys, 162 S.W. 1196, opinion by Mr. Justice Dunklin of this court, in which the authorities are reviewed.

The agent is one employed by a corporation. In dealing with such an agent the doctrine of apparent authority is thus stated in 2 Texas Jurisprudence, par. 39, pp. 425, 426: "When a principal has placed an agent in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is led to believe that the agent has authority to perform acts usually done in a business of that kind, one dealing with the agent is justified in presuming such authority to have been given."

The text is supported by a number of Texas authorities.

Further the text says: "A principal is equally bound by the authority which he actually gives, and by that which by his own act he appears to give."

The record in this case is silent so far as it bears upon any act done by the appellant corporation in connection with Moss' employment, or his authority to do anything other than to contract for the storage of products in its plant.

The evidence is insufficient to sustain the finding of the jury that appellant ever purchased the onions from appellee, through its agent Moss, and there is absolutely no evidence to support the finding of the jury that Moss had any apparent authority to make the contract relied upon for recovery.

There are other interesting questions raised in appellant's brief, but we feel no necessity for passing upon them.

The assignments of error touching the two questions discussed are sustained, and the judgment of the trial court is reversed

and judgment is here rendered that appellee take nothing as against appellant, United States Cold Storage Company. The judgment against the Leftwich Marketing Company is by us undisturbed.

Reversed and rendered in part and undisturbed in part.