**HARTZELL PROPELLER COMPANY, INC., Appellant,**

v.

**Barbara Nan Dick ALEXANDER et al., Appellees.**

**No. 5161.**

Court of Civil Appeals of Texas, Waco.

Oct. 5, 1972.

Rehearing Denied Oct. 26, 1972.

Anderson, Henley, Shields, Bradford & Pritchard, C. A. Searcy Miller, Dallas, for appellant.

Jackson, Walker, Winstead, Cantwell & Miller, H. Dudley Chambers, Turner, Rodgers, Winn, Scurlock & Sailers, John H. McElhaney, Dallas, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Hartzell from $45,500 judgment for plaintiffs in a products liability case.

Plaintiffs Alexander and Ballanger (daughters of Fred Dick, deceased), Southwestern Public Service Company, and Hartford Accident and Indemnity Company, sued defendants Hartzell Propeller Company and Dallas Aero Service, alleging that on February 10, 1967 a Beechcraft airplane owned by Southwestern and piloted by Fred Dick crashed and burned at Dallas Love Field killing all occupants of the aircraft, including Dick and A. R. Wilson, President of Southwestern, and destroying the aircraft.

Plaintiffs alleged the cause of the crash was the inflight failure, on take off, of a propeller blade manufactured by defendant Hartzell; that the propeller blade which failed was defective and unreasonably dangerous to the user or consumer in that "The failed blade did not have a large enough shank size"; and that such was a producing cause of the failure.

Plaintiffs alternatively plead that defendant Aero Service negligently failed to inspect or rework the engine upon which the failed propeller blade was mounted, which negligence was a proximate cause of the crash.

Plaintiffs Alexander and Ballanger sought $75,000 damages for the wrongful death of Fred Dick, for losses suffered by their mother, surviving widow (since deceased) of Fred Dick, and for themselves as daughters of Fred Dick, alleging they have been deprived of reasonably expected

pecuniary contributions, care, counsel, guidance, protection and services of their father.

Southwestern sought $65,000, as the value of its aircraft.

Hartford sought death benefits under workman's compensation policies and funeral benefits paid on Watson; (and subrogation of amounts paid on Dick).

Defendant by answer plead contributory negligence, misuse, and voluntary exposure to risk by pilot Dick; that negligence of Aero proximately caused the accident; and that plaintiffs Alexander and Ballanger, daughters of Fred Dick were not entitled to recover damages as a matter of law as they were grown and married.

Trial was to a jury which found:

1) At the time it left the hands of Hartzell Propeller Inc., the shank size of the propeller blade in question rendered it unreasonably dangerous.

2) Said condition was a producing cause of the failure of the propeller blade.

8) Barbara Dick (widow of Fred Dick) was damaged $7,000.

9) Barbara Dick Alexander was damaged $3,000.

10) Suzan Dick Ballanger was damaged $10,000.

11A) $1000. was reasonable expense for burial of A. R. Watson.

15) On the occasion in question the right engine was running rough or vibrating immediately prior to takeoff.

16) Fred Dick was negligent in taking off on the occasion.

17) Said negligence was a proximate cause of the accident.

18) Dallas Aero Service did not fail to properly service the right engine of the aircraft at the time of overhaul.

21) The failure of Pratt & Whitney to amend its service bulletins prior to February 1967 relative to engines (as on the Southwestern Aircraft) was not the sole proximate cause of the accident.

22) The failure of the FAA to make certain requirements was not the sole proximate cause of the accident.

The trial court rendered judgment for plaintiff Southwestern for $25,000. (on stipulation of the value of its aircraft); for plaintiffs Alexander, Ballanger and Hartford for $20,000 (in such proportions as are satisfactory to them); and for plaintiff Hartford for $500. for payment made on funeral of A. R. Watson.

The record reflects that on February 10, 1967, during daylight and in good weather, a twin engined Beechcraft airplane, owned by Southwestern, and piloted by the professional full time company pilot Fred Dick, crashed and burned at Love Field just moments after takeoff, killing Dick, Southwestern's President W. R. Watson, and Watson's wife.

Just after takeoff when the aircraft reached 100 to 200 feet in altitude one of the propeller blades on the right engine separated from the aircraft, causing extreme vibration. The right engine broke loose and the aircraft, observed by witnesses in the control tower, crashed and burned. The entire event transpired in 10 to 15 seconds.

The propeller which failed was manufactured by defendant Hartzell. The model was designed in 1956 and installed on the Southwestern aircraft in May 1964. The propeller which the manufacturer represents should have an "indefinite life", had 852 hours total flight time at the time of failure.

The failure was caused by a fatigue fracture in the butt end of the propeller blade, which was hidden from detection from all inspections other than a complete major overhaul conducted only at 800 to 1000 hour intervals.

There is evidence the failure was caused by the fact the diameter of the propeller blade was not large enough to withstand the vibratory stresses of the Pratt & Whitney engine upon which it was mounted. The engine was designed in the 1930's and defendant in 1956 designed this propeller for the existing engine. Defendant admitted that prior to the accident made basis of this case it came to the knowledge and realization that its propeller needed to be strengthened, and that simple redesign by increasing the propeller shank size would double the margin of safety, and in reasonable probability such precaution would have prevented a crash under the circumstances here involved. Despite this knowledge and realization defendant withheld such information from the public because it did not have its new "beefed up" model ready to sell.

Defendant appeals on 71 points[1], an overview of which discloses four basic contentions.

Defendant's 1st contention asserts Issues 1 and 2 will not support a judgment; that the element of foreseeability is missing; and that the trial court's definitions of unreasonably dangerous and producing cause are erroneous.

Issue 1 found "that at the time it left the hands of Hartzell Propeller, Inc., the shank size of the propeller blade rendered it unreasonably dangerous." And Issue 2 found "said condition was a producing cause of the failure of the propeller blade."

The trial court instructed the term " 'unreasonably dangerous' as used herein means that an ordinary man, knowing the risks and dangers actually involved in its use—however latent or scientifically undiscoverable the hazard might have been, and

whether due to a miscarriage in the manufacturing process or the way the product was designed—would not have placed in the channels of commerce"; and " 'Producing Cause' means an efficient, exciting, or contributing cause, which in a natural and continuous sequence, in connection with any other cause or causes produced the event complained of. There may be more than one producing cause of an event".

■ Texas has adopted the rule of strict liability in tort (Sec. 402A Strict Liability, Restatement of Torts 2d), to users and consumers, with respect to sellers and manufacturers of defective products, which cause physical harm to persons. Franklin Serum Co. v. C. A. Hoover & Son, Tex., 418 S.W. 2d 482.

■ And the doctrine of strict liability is applicable to defective design cases. Pizza Inn, Inc., v. Tiffany, CCA, NWH, Tex.Civ.App., 454 S.W.2d 420; Garcia v. Sky Climber, Inc., CCA, NRE, Tex.Civ. App., 470 S.W.2d 261; Ford Motor Co. v. Russell & Smith Ford Co., CCA, NWH, Tex.Civ.App., 474 S.W.2d 549.

■ C. A. Hoover v. O. M. Franklin Serum Co., Tex., 444 S.W.2d 596, establishes that foreseeability has no place in the concept of strict liability in situations as here.

The cases cited establish that issues 1 and 2 will support plaintiff's judgment. The trial court's definitions of "unreasonably dangerous" and "producing cause" are not erroneous.

Defendant's 2nd contention asserts there is no evidence or insufficient evidence to support the jury's answer to Issues 1, 2, 18, 21, and 22.

[1]. Many of these points are based on assignments which violate Rules 374 or 418 Texas Rules of Civil Procedure, or are multifarious, for which reasons the matters complained of are not properly preserved. Weingarten v. Moore, Tex., 449

S.W.2d 452; MKT Ry. v. McFerrin, S.Ct. 156 Tex. 69, 291 S.W.2d 931; Int. Sec. Life Ins. Co. v. Howard, CCA, NRE, Tex.Civ.App., 456 S.W.2d 765; SMI v. Jamieson, CCA, NWH, Tex.Civ. App., 473 S.W.2d 275.

■ Issue 1 found the shank size of the propeller blade rendered it unreasonably dangerous, and Issue 2 found such a producing cause of the failure of such blade. The witness Bierman, president of defendant, admitted that before the crash defendant came to the actual realization that its propeller needed to be strengthened. Defendant's witness Chritchloe testified that to "increase the strength of the propeller" would solve the problem. And Mr. Bierman further testified that increasing the size of the propeller shank would double the safety margin; that defendant did so after the crash; and that use of the new blade would in reasonable probability have prevented this crash.

In issues 18, 21, and 22 the jury found Dallas Aero Service did not fail to properly overhaul the engine; that the engine's manufacturer and FAA's failure to require more stringent servicing were not the sole proximate cause of the accident.

Dallas Aero's service records are in evidence and reflect that proper servicing requirements were met. The engine manufacturer designed the engine in the 1930's. It has been out of production since World War II. It originally came with a different type propeller. Defendant designed and manufactured its propeller to go on the engine. Defendant's witness Chritchloe testified the problem could be solved by increasing the strength of the propeller. Witness Bierman testified the engine problems here involved "was very difficult to control from the FAA's standpoint." The contention is overruled.

Defendant's 3rd contention asserts judgment should have been rendered for it upon Issues 15, 16, and 17. These issues found that on the occasion the right engine was running rough; that Dick was negligent in taking off; and said negligence was a proximate cause of the accident.

■■ When the strict liability rule attaches or is applicable, conventional contributory negligence of plaintiff is not a defense; nor is contributory negligence consisting of failure to discover the defect in the product, or to guard against the possibility of its existence. Shamrock Fuel & Oil Sales Co. v. Tunks, Tex., 416 S.W. 2d 779; McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787. The findings were properly disregarded by the trial court.

Defendant's 4th contention asserts there is no evidence or insufficient evidence to support the jury's answers to Issues 9 and 10, and that plaintiffs Alexander and Ballanger are entitled to no award as a matter of law.

Plaintiffs Alexander and Ballanger were the daughters of pilot Dick. The jury in Issues 9 and 10 awarded them $3000. and $10,000. respectively for the death of their father. Barbara Alexander, age 29, was having difficulties with her husband (from whom she was divorced four months after the crash). Her husband did not support her. She looked to her father for personal guidance, advice, and financial support. Her father maintained a joint bank checking account for her benefit. Suzan Ballanger, age 19, married because of a pregnancy at 18; never lived with her husband and was divorced from him after the baby came. She lived with her parents and depended on her father for personal guidance, advice, and support. At the date of her father's death she was regularly receiving $170. per month from her father for support. Article 4671, our wrongful death statute, makes no distinction between adults and infants, or married or single survivors. Article 4675 provides for recovery by the surviving spouse and "children".

■ Adult children may recover damages for the wrongful death of parents, and in arriving at such damages the loss of prospective contribution from the deceased parent may be taken into consideration. San Antonio & A. P. Ry. Co. v. Long, 87 Tex. 148, 27 S.W. 113; Texas & P. Ry. Co. v. Martin, CCA, NWH, 25 Tex.Civ.App. 204, 60 S.W. 803; IGN Ry.

Co. v. Acker, CCA, Er. Dism'd. judgment correct, Tex.Civ.App., 128 S.W.2d 506; Houston Gas & Fuel Co. v. Perry, 127 Tex. 102, 91 S.W.2d 1052; Texas Consolidated Transportation Co. v. Eubanks, CCA, NRE, Tex.Civ.App., 340 S.W.2d 830. This contention is overruled.

All defendant's points have been considered and are overruled.

Affirmed.