Elzie Pauline ROURKE, Individually, etc., Petitioner,

v.

Adolph O. GARZA et al., Respondent.

No. B–4791.

Supreme Court of Texas.

Nov. 5, 1975.

Rehearing Denied Jan. 7, 1976.

Mills, Shirley, McMicken & Eckel, Preston Shirley, Galveston, for petitioner.

R. A. Apffel, Galveston, Kronzer, Abraham & Watkins, John B. Murphrey, Nick C. Nichols and W. J. Kronzer, Houston, McLeod, Alexander, Powel & Apffel, V. W. McLeod and James L. Anthony, Galveston, for respondent.

GREENHILL, Chief Justice.

This is a products liability case. Respondent, Adolph O. Garza, a pipefitter-welder employed by Har-Con Engineering Company, Inc., brought this suit against J. E. Rourke,[1] individually and d/b/a J. E. Rourke Rental & Supplies, for personal injuries sustained in a fall from scaffolding which had been supplied by Rourke Rental to Har-Con at Har-Con's job site in Galveston, Texas. Rourke Rental impleaded Har-Con, alleging written indemnity. The trial court entered judgment on the jury's verdict in favor of Garza for $303,126.42. The plaintiff Garza, as an employee of Har-Con, had been paid workmen's compensation for total and permanent disability in the amount of $35,326.42. Traveler's Insurance Company, the compensation carrier for Har-Con, was awarded that amount of the above judgment by subrogation. The trial court denied Rourke Rental's plea of indemnity against Har-Con. The court of civil appeals affirmed, one justice dissenting. 511 S.W.2d 331. We affirm.

## STRICT LIABILITY

Plaintiff Garza charged that Rourke Rental supplied defective scaffolding equip-ment to Har-Con's job site in that the scaffolding boards supplied did not include cleat-type devices attached to the boards to prevent their slipping on the pipe frames. These cleats are 2 x 4-inch boards nailed to the underside on each end of the boards to prevent lateral movement of the boards.

In May of 1965, Har-Con, a Houston-based construction firm, was engaged in several construction jobs in Galveston, Texas, including the work at Sam Houston School where the accident occurred. Har-Con specialized in mechanical work such as plumbing, air conditioning, heating and ventilating. Rourke Rental had been in the business of renting scaffolding equipment for about fifteen years prior to the accident, and it had previously rented such equipment to Har-Con.

On this occasion, Rourke Rental's delivery man, Ferdinand Meyer, delivered and unloaded the scaffold pipe frames, boards, and connecting pins at the job site at the Sam Houston School. After unloading the equipment, Meyer called Har-Con's superintendent, Fred Newton, to check the delivery. Newton counted the materials and signed a receipt which recited that the equipment had been delivered in good order, and which contained, on its reverse side, an indemnity provision. The scaffolding included four 2 x 10-inch boards eight feet in length which would lie across the steel pipe frames to form the platform. Har-Con's foreman, Hawkins, and several other Har-Con employees actually erected the scaffolding.

The plaintiff, Garza, saw the scaffolding equipment when it was delivered and while it was being erected; but he took no part in the unloading, checking or assembly of the scaffold. After the scaffold was erected, Garza climbed to the top platform, and worked there about one-and-one-half hours before the accident occurred. He testified

1. J. E. Rourke died prior to trial, and the suit was continued against his estate by and through his wife, Elzie Pauline Rourke, in her capacity as Independent Executrix and community survivor.

that immediately prior to the accident, he had finished making a weld and had stepped aside so that his helper could scrape the weld, and that he then fell through the center of the scaffolding when two of the boards "slipped on the inside."

The following issues regarding Rourke Rental's liability were submitted by the trial court and answered by the jury:

## SPECIAL ISSUE NO. 1

"Do you find . . . that failure to have cleat type devices on the scaffold boards delivered by the Defendant, Rourke Rental . . . rendered the scaffold boards defective as herein defined?

"You are instructed that a product is 'defective' as that term is used in the above Special Issue, if the product exposes its user to an unreasonable risk of harm when used for the purpose for which it was intended.

"By the term 'unreasonable risk of harm,' as used in the above and foregoing instruction is meant that the article leased must be dangerous to an extent beyond that which would be contemplated by the ordinary user who leases it, with the ordinary knowledge common to the community as to its characteristics.

"ANSWER: 'We do.' "

## SPECIAL ISSUE NO. 2.

"Do you find . . . that Defendant ROURKE RENTAL could reasonably anticipate that the scaffold boards delivered on May 27, 1965, might be placed upon the scaffold frame without the addition of cleat type devices?

"ANSWER: 'We do.' "

## SPECIAL ISSUE NO. 3.

"Do you find . . . that the failure to have cleat type devices on the scaffold boards was a producing cause of the occurrence in question?

"In connection with the foregoing Special Issue, you are instructed that the term 'producing cause' means an efficient, exciting, or contributing cause, which, in a natural sequence, produced injuries or damages complained of, if any. There can be more than one producing cause.

"ANSWER: 'We do.' "

## SPECIAL ISSUE NO. 4.

"Do you find . . . that Defendant ROURKE RENTAL'S failure to provide cleat type devices on the scaffolding boards in question constituted negligence as that term is herein defined?

"ANSWER: 'We do not.' "

Garza obtained judgment on the theory of strict liability in tort. The Restatement (second) of Torts § 402A (1965) states that a seller of a product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm caused to the user if the seller is engaged in the business of selling such a product and it is expected to and does reach the user without substantial change in the condition in which it is sold. This rule applies even though the seller has exercised care in the preparation and sale of his product and even though the user has not purchased the product or entered into any contractual arrangement with the seller. This statement of strict liability has been adopted as the rule in Texas. *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex.1969); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). The rule applies to unreasonably dangerous products whether the defect occurred in their production or their design. *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974); *Ford Motor Co. v. Russell & Smith Ford Co.*, 474 S.W.2d 549 (Tex.Civ.App.—Houston [14th] 1972, no writ); *Garcia v. Sky Climber, Inc.*, 470 S.W.2d 261 (Tex.Civ.App.—Houston [1st] 1971, writ ref. n. r. e.).

Rourke Rental contends that the scaffold boards were not defective at the time of delivery, since they were in sound condition; i. e., the lumber was not defective and did not break. This argument, however, overlooks the fact that we are here concerned with the lease of a disassembled scaffold, not merely the lease of lumber which could be used as the lessee pleased. It is undisputed that the parties intended the boards to be used for scaffolding. It is also clear from the testimony of Mrs. Rourke and Mr. Meyer that the boards were used in exactly the manner intended by Rourke Rental.

■ The determination of whether a product is defective must be made in light of the normal uses of the product; and where it is misused, strict liability does not apply. *Helicoid Gage Division of American Chain and Cable Co. v. Howell*, 511 S.W.2d 573 (Tex.Civ.App.—Houston [14th] 1974, writ ref. n. r. e.); *McDevitt v. Standard Oil Company of Texas*, 391 F.2d 364 (5th Cir. 1968); Restatement (second) of Torts § 402A, comment *h* (1965). Since it is undisputed that the scaffold boards here were properly used (in fact, they were used exactly as Rourke Rental intended), our question is whether or not the boards were unreasonably dangerous for use as scaffolding.

While evidence was produced by both sides as to whether the boards were or were not unreasonably dangerous for this use, there was testimony to support the jury's finding against a "no evidence" attack. Two witnesses, Conley and Newton, testified that scaffold boards were customarily furnished with cleats. Conley testified that without cleats, a scaffold would present a "danger situation," would be "very unsafe" and "would not be reasonably fit for scaffolding boards." Newton testified that without cleats, "you have got a dangerous situation." All the witnesses recognized that cleats would have prevented the boards from slipping off the frames. Meyer testified that the scaffold boards were eight feet long and were used on a seven-foot scaffold, leaving only a six-inch margin of safety on each side of the pipe frames.

There is evidence to the contrary. Meyer, the delivery man, testified that Rourke Rental never used cleats on the boards, and that the customer could add them himself if he wanted cleats. He testified that if Rourke Rental put cleats on there would be an extra charge, but that this was never done. He said that when boards were returned with cleats on them, he just knocked them off with a hammer. He further testified that Har-Con had never asked for cleats, and that no cleats had been put on the boards delivered to Har-Con.

■ When a party asserts that there is no evidence to support jury findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974); *Langlotz v. Citizens Fidelity Ins. Co.*, 505 S.W.2d 249 (Tex.1974). The jury having found that the scaffold boards were unreasonably dangerous, and there being evidence to support the finding, we cannot, as a matter of law, hold otherwise.

This result does not place an unreasonable burden on suppliers of scaffolding. Cleats do not impair the usefulness of the boards, nor are they expensive to attach. By using cleats or comparable devices, a substantial risk of harm may be avoided. Thus, the jury was justified in concluding that the risk of harm outweighed the utility of the cleatless scaffold boards and that they were therefore unreasonably dangerous. See *Helicoid Gage Division of American Chain and Cable Co. v. Howell, supra; Metal Window Products Co. v. Magnusen*, 485 S.W.2d 355 (Tex.Civ.App.—Houston [14th] 1972, writ ref. n. r. e.); Wade, *Strict Tort Liability of Manufacturers*, 19 SW.L.J. 5, 17 (1965); Keeton, *Products Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30, 38–39 (1973).

We are also unable to agree that the danger did not exist at the time of delivery, since it was the failure to supply cleats that made the boards defective. These scaffolding boards were expected to and did reach Garza without substantial change in their condition, and therefore clearly fall within the Restatement rule. Restatement (second) of Torts § 402A (1965).

Rourke Rental next contends that the theory of strict liability is not applicable to the *leasing* of equipment to an industrial user, as distinguished from a *sale* of the equipment. We can see no sound basis for this distinction. Where one is engaged in the business of introducing products into the channels of commerce, he will be subject to strict liability for physical harm caused by such products if they are unreasonably dangerous to the user or consumer whether he sells or leases his products. See *Garcia v. Sky Climber, Inc., supra*; *Bachner v. Pearson*, 479 P.2d 319 (Alaska 1970); *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 212 A.2d 769 (1965); *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (1972). This point is overruled.

In the third consolidated point, Rourke Rental contends that because the jury failed to find it *negligent* in failing to provide cleats for the scaffolding boards, it cannot be strictly liable for an alleged design defect. It argues that the jury has returned contradictory findings because one way of stating that a product is defectively designed is that no prudent manufacturer, aware of the risks involved in its use, would place such products into the channels of commerce. This contention misconceives the basis of strict liability in tort. A finding of negligence is not required. In fact, the supplier may be liable even though he has exercised all possible care in the preparation and sale of his product. *McKisson v. Sales Affiliates, Inc., supra*; Restatement (second) of Torts § 402A, comment *a* (1965). While the definitions of "negligence" and "defective design" may have certain similar or common elements, they involve two separate theories of recovery. *McKisson v. Sales Affiliates, Inc., supra*; Restatement (second) of Torts § 402A, comment *a* (1965).

Rourke Rental submits that because the absence of cleats was open and obvious and did not constitute a latent defect, strict liability is inapplicable. It further complains of the refusal of the trial court to submit special issues relating to the open and obvious condition of the scaffold boards. Section 402A of the Restatement (Second) of Torts does not distinguish between patent and latent defects in products, nor is the obviousness of the peril mentioned as the basis of a defense to strict liability. It is an appropriate defense that the user voluntarily exposed himself to the risk posed by the defective product with knowledge and appreciation of the danger. *Henderson v. Ford Motor Co., supra*; Restatement (second) of Torts § 402A, comment *n* (1965). If Garza knew of the absence of cleats on these boards, or if he was charged in law with such knowledge, and he appreciated the danger, strict liability would be defeated. However, no evidence shows that Garza inspected the equipment when it was delivered, or that he helped assemble it. The jury refused to find that he had knowledge of the absence of cleats prior to the accident, and we cannot conclude as a matter of law that he was chargeable with such knowledge. Contributory negligence or failure to act reasonably is not a defense to strict liability. Restatement (second) of Torts § 402A, comment *n* (1965); *Henderson v. Ford Motor Co., supra*. Thus whether Garza should have inspected the assembled scaffold before using it is not controlling. These points are overruled.

In *Delhi-Taylor Oil Corp. v. Henry*, 416 S.W.2d 390 (Tex.1967), this Court held that while "[a landowner] owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be

held to discharge the landowner's alternative duty to warn the employees." It is Rourke Rental's position that the knowledge of Har-Con's superintendent and foreman of the absence of cleats is enough to discharge Rourke Rental's duty to warn Garza about the dangerous condition of the scaffolding boards.

█ This argument fails to recognize the differences in the duties owed by a landowner and a supplier of products. The duty of the former, being based on negligence, requires only that he exercise reasonable care to make his premises safe for his invitees. *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972); *J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538 (Tex.1968). This duty may be discharged by adequate warnings. *J. Weingarten, Inc. v. Razey, supra*; *Halepeska v. Callihan Interests*, 371 S.W.2d 368 (Tex.1963). A supplier of products, on the other hand, has a more stringent duty. As stated above, negligence is not required, and a supplier may be liable even though he has exercised all possible care.

The rationale of the rule in *Delhi-Taylor* is found in the landowner's duty to exercise reasonable care. This Court there held that to require the landowner to warn each employee of an independent contractor of the dangers on his land would result in imposing a duty exceeding that standard of care. *Gulf Oil Corp. v. Bivins*, 276 F.2d 753 (5th Cir. 1960); *Tyler v. McDaniel*, 386 S.W.2d 552 (Tex.Civ.App.—Dallas 1965, writ ref. n. r. e.); *Storm v. New York Tel. Co.*, 270 N.Y. 103, 200 N.E. 659 (1936). Since reasonable care is not the standard in products liability cases, Rourke Rental's analogy to *Delhi-Taylor* is inappropriate, and we decline to extend its reasoning to this area.

Neither can we agree that Rourke Rental is not responsible for this accident because the scaffold was erected by Har-Con's employees. Mrs. Rourke, representing Rourke Rental, testified that the equipment was leased to be used just as it was used, and that she had no complaint about Har-Con's failure to add cleats to the boards. Since the boards were expected to and did reach the user, Garza, without substantial change in condition, Rourke Rental may be held strictly liable. Cf. *Bexiga v. Havir Mfg. Corp.*, 60 N.J. 402, 290 A.2d 281 (1972); Restatement (second) of Torts § 402A, comments *p* and *q* (1965).

█ The next points relate to the refusal of the trial court to submit special issues inquiring whether the boards were delivered in a condition not contemplated by Har-Con or Garza. The issue relating to Har-Con's contemplation was properly refused because it is not a controlling issue. Rule 279, Texas Rules of Civil Procedure. What Har-Con contemplated is not relevant to Rourke Rental's liability to Garza. Whether Garza contemplated that the boards would be delivered with or without cleats relates to the defense that he assumed the risk. That issue was fairly submitted by special issue No. 6 which asked whether prior to the accident Garza actually knew of the absence of the cleats. As has been noted, the jury failed to find that Garza had such knowledge. Consolidated point 9 is overruled.

█ Rourke Rental also asserts that the court erred in submitting producing cause instead of proximate cause, and in defining producing cause as "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any. There can be more than one producing cause." There was no error in the submission or definition. *Hoover and Son v. O. M. Franklin Serum Co.*, 444 S.W.2d 596 (Tex.1969); *Hartzell Propeller Co. v. Alexander*, 485 S.W.2d 943 (Tex.Civ.App.—Waco 1972, writ ref. n. r. e.); Restatement (second) of Torts § 402A (1965).

Having examined Rourke Rental's first ten consolidated points of error, we conclude that they must be overruled and that the judgment in Garza's favor must be affirmed.

## INDEMNITY—APPARENT AUTHORITY

When Rourke Rental delivered the unassembled scaffold, it was received by Newton, Har-Con's superintendent for the Galveston area. Newton signed the delivery ticket which stated that the equipment was received "in good order subject to terms and conditions on the reverse side." The second paragraph of these terms contains a "hold harmless" clause which, according to Rourke Rental, requires Har-Con to indemnify it for any liability it has to Garza.

The trial court submitted two special issues to determine the authority of Newton to bind Har-Con to an indemnity contract:

### SPECIAL ISSUE NO. 14.

"Do you find from a preponderance of the evidence that FRED NEWTON had the authority from HAR–CON to execute on behalf of HAR–CON Order A–8829, together with the terms and conditions on the front and back of said order?

"ANSWER: 'We do not.'

### SPECIAL ISSUE NO. 15.

"Do you find from a preponderance of the evidence that FRED NEWTON had the apparent authority from HAR–CON to execute on behalf of HAR–CON, Order A–8829, together with the terms and conditions on the front and back of said order?

"In connection with your answer to this issue, you are instructed that where a principal places an agent in such a situation that a person of ordinary prudence who is conversant with the business usages and the nature of the particular business would reasonably be led to believe that the agent has authority to perform acts customarily done in business of that kind, one who deals with the agent would be justified in believing that he has such authority.

"ANSWER: 'We do.' "

Har-Con objected to Special Issue No. 15 for several reasons, including that there was no evidence to justify the submission of the issue to the jury and that the charge did not require that Rourke Rental must reasonably have relied on such apparent authority, if any. The objection was overruled. After the jury returned its answers, Har-Con filed a motion to disregard the jury findings to Special Issue No. 15 and for judgment non obstante veredicto. The court granted both motions. Rourke Rental contends that the court erred in granting these motions.

In *Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422 (1953), this Court made the following statement regarding apparent authority:

"The doctrine of apparent authority is based on estoppel, and one seeking to charge a principal through the apparent authority of an agent to bind the principal must prove *such conduct on the part of the principal as would lead a reasonably prudent person*, using diligence and discretion, *to suppose that the agent has the authority he purports to exercise.*" [Emphasis added]

Therefore, in order to establish that Newton had apparent authority to bind Har-Con to the indemnity agreement, Rourke Rental must show conduct on the part of Har-Con leading reasonably to the belief that Newton had this authority. *Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas*, 516 S.W.2d 138 (Tex.1974); *Chastain v. Cooper & Reed, supra*; *Great American Casualty Co. v. Eichelberger*, 37 S.W.2d 1050 (Tex.Civ.App.—Waco 1931, writ ref'd).

While there are numerous actions on the part of a principal which, in certain situations, may give rise to apparent authority, see Restatement (second) of Agency § 27, comment a (1957), there are only two possibilities present in this case: the course of prior dealings between Rourke Rental and Har-Con, and the fact that Har-Con had placed Newton in the position of superintendent of the Galveston area jobs.

Rourke Rental argues that it was reasonable to believe that Newton had the authority to execute the indemnity agreement in view of the fact that Har-Con had paid seven prior bills based on identical delivery ticket forms without any protest that the employees who had signed them were without such authority. Of these prior tickets, only one had been signed by Newton. One had been signed by Hawkins (the foreman), two by Criss (a pipefitter), and three by Barrett or Cullen, neither of whom is identified in the record. Moreover, Rourke's contention overlooks the uncontroverted evidence that Har-Con did not become aware of the existence of the indemnity provisions until after Newton had signed the delivery ticket in question.

As noted above, the doctrine of apparent authority is based on estoppel. *Chastain v. Cooper & Reed, supra.* It is essential to the application of the doctrine of estoppel that the person claimed to be estopped have had knowledge of all material facts at the time of the conduct alleged to constitute the basis of the estoppel. *Hallmark v. United Fidelity Life Ins. Co.,* 155 Tex. 291, 286 S.W.2d 133 (1956); *Richey v. Miller,* 142 Tex. 274, 177 S.W.2d 255 (1944). Such knowledge may be imputed where the party against whom the estoppel is asserted "has knowledge or information of facts sufficient to put him upon inquiry which if reasonably pursued would lead to the discovery of the controlling fact . . . ." *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 403 (Tex.1965).

It is undisputed that Har-Con, through its officers and agents, did not have actual knowledge of the existence of the indemnity provisions at the time Newton signed the ticket in question. Thus estoppel would arise only if this knowledge is imputed to them. They were aware, however, of no facts sufficient to put them upon inquiry, nor were they in such a position that they ought to have been aware of the indemnity provisions. *Booth Fisheries Corp. v. Eardley,* 233 S.W.2d 872 (Tex.Civ. App.—El Paso 1950, writ ref'd, n. r. e.). There had been no discussions or negotiations regarding indemnity provisions or any of the terms located on the reverse side of the delivery ticket. Har-Con's orders for scaffolding equipment were not placed by Newton or any of the employees at the Galveston job sites, but were placed through Har-Con's Houston office. There is no evidence that, at the time these orders were placed and accepted, Rourke Rental gave any indication that the deliveries would be subject to any additional terms. Newton was not aware of such provisions, nor had Rourke Rental's delivery man, Meyer, given any indication that the delivery ticket contained contractual provisions or that it was intended for anything other than proof of delivery. In fact, from Meyer's testimony it is clear that even he did not believe that any other use was intended. In response to the question of why he had someone sign the form, Meyer testified that "if I wouldn't have nobody to sign this form, my scaffold could disappear. Who got it, who is responsible for it?" When asked if he meant that the delivery ticket's purpose was simply to acknowledge receipt of the delivery, Meyer responded by saying, "that it was delivered, and it is delivered in good order, and we got somebody to hold responsible for the scaffold." We therefore are unable to find in the prior dealings between Har-Con and Rourke Rental any basis for a finding of apparent authority.

Rourke Rental also relies on Newton's position as general superintendent of the Galveston area to support the jury's finding of apparent authority. It contends that Har-Con, by placing Newton in this position, created a situation in which Rourke Rental could have reasonably believed that Newton had the authority to bind Har-Con to the indemnity provision. It emphasizes Newton's responsibility over more than one job site, and his testimony that he was the head man for Har-Con in the Galveston area.

In certain situations, appointing a person to a position may be sufficient in

itself to create apparent authority. Thus statements by a local credit manager and a local manager may bind their company, *Shahan-Taylor Co. v. Foremost Dairies,* 233 S.W.2d 885 (Tex.Civ.App.—San Antonio 1950, writ ref'd n. r. e.); so also may a bank be responsible for actions by its executive vice president where the president was never active in bank affairs. *Insurance Co. of North America v. Fredonia State Bank,* 469 S.W.2d 248 (Tex.Civ.App.—Tyler 1971, no writ). However, apparent authority in such cases exists only as to those things ordinarily entrusted to one occupying such a position. *Shahan-Taylor Co. v. Foremost Dairies, supra; United States Cold Storage v. Richards,* 99 S.W.2d 697 (Tex.Civ.App.—Fort Worth 1936) *aff'd,* 131 Tex. 148, 112 S.W.2d 445 (1936); Restatement (second) of Agency § 27, comment *a* (1957).

■ We believe that, as a matter of law, the signing of such broad indemnity contracts is not a duty ordinarily entrusted to a person of Newton's position. Newton was described variously as a "general superintendent of the Galveston area," "field superintendent," "job superintendent," and "general foreman." At the time of the accident, he was supervising four or five jobs in the Galveston area. The number of Har-Con employees at each job site was usually three or four, although the job at the Flagship Hotel required from six to eight. Newton's duties involved supervising and directing the work at the job sites, through instructions to the various foremen. He was not in charge of acquiring supplies, other than small items, but would order them through Har-Con's office in Houston. His salary was paid on an hourly basis, as set by a union contract, which also described his general duties and responsibilities.

■ Contracts indemnifying one against his distribution of defective products should be viewed as exceptions to the usual business practice, in the same manner as those indemnifying one against his own negligence. *Spence & Howe Const. Co. v. Gulf Oil Corp.,* 365 S.W.2d 631 (Tex.1963). As evidenced from the facts in this case, they may have great financial impact on the parties, and are therefore not of the kind ordinarily executed by a superintendent of job sites. The mere fact that Har-Con employed Newton in such a position is not evidence upon which to base a finding of apparent authority to execute an indemnity agreement.

There is an additional reason why Newton's position as superintendent does not support a finding of apparent authority. Such authority cannot be established except by facts known to the party dealing with the agent and *relied upon by him* in such dealings. *Bluebonnet Oil & Gas Co. v. Panuco Oil Leases, Inc.,* 323 S.W.2d 334 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.); *Shahan-Taylor Co. v. Foremost Dairies, supra.* There is no evidence that Rourke Rental was relying on Newton's position as superintendent when the delivery ticket was signed. Meyer, the delivery man, testified that it did not make any difference who signed the ticket. Such person could have been a mere pipefitter, so long as he worked for Har-Con. Any claim of reliance by Rourke Rental is further negated by the fact that Newton had signed only one of the seven prior delivery tickets signed by Har-Con employees. One had been signed by Hawkins, the foreman, two by Criss, a pipefitter, and three by Barrett or Cullen, neither of whom is identified in the record.

■ Consequently, we hold that the trial court did not err in disregarding the jury finding of apparent authority, and in granting judgment non obstante veredicto for Har-Con, nor did it err in refusing to submit additional issues relating to that doctrine.

■ Rourke Rental argues that, even if Har-Con was not bound by the indemnity provision at the time Newton signed the delivery ticket, it later ratified the agreement by accepting its benefits and failing to disaffirm it. This contention fails for the same reason that apparent authority

cannot be based on the prior dealings between Har-Con and Rourke Rental. There was no evidence that Har-Con was aware of the existence of the indemnity provision, nor was there evidence from which such knowledge could be imputed. Since the party alleged to have ratified an agreement must have knowledge of all material facts, *Frazier v. Wynn*, 472 S.W.2d 750 (Tex. 1971); *Jamail v. Thomas*, 481 S.W.2d 485 (Tex.Civ.App.—Houston [1st] 1972, writ ref'd, n. r. e.), there can be no ratification in this case, and we conclude that the trial court did not err in refusing to submit issues on this theory.

Our conclusion that Har-Con was not bound by the agreement to indemnify Rourke Rental makes it unnecessary to consider the remaining points of error.

The judgment of the Court of Civil Appeals is affirmed.

Dissenting opinion by DANIEL, J., in which STEAKLEY and DENTON, JJ., join.

DANIEL, Justice (dissenting).

I respectfully dissent.

Upon the doctrine of strict products liability, the majority upholds a judgment of $303,000 for personal injuries against the lessor of certain component products (four 2″ x 10″ boards 8 feet long) of an unassembled scaffold even though it is undisputed that the products were in sound condition when they were delivered.

This result is based upon jury findings that the failure to have additional products (cleat-type devices) affixed to the scaffold boards rendered them defective and that such failure was a producing cause of the accident.

The jury failed to find that the lessor, Rourke Rental, was negligent in supplying the scaffold boards without cleat-type devices,[1] and I think undisputed evidence precludes recovery against Rourke on the theory of strict liability.

Garza, the injured plaintiff, was an employee of Har-Con Engineering Company, a large industrial contractor which had much experience in the erection and use of scaffolds. Garza's accident occurred in May of 1965, when he fell from a scaffold erected on the job site by Har-Con. He received workmen's compensation from Har-Con's carrier, which was awarded $35,326 of Garza's recovery against Rourke Rental in this suit. It is undisputed that Har-Con exercised full responsibility for ordering, renting, and erecting the scaffold equipment. It rented the unassembled scaffolding from Rourke Rental, a one-employee family corporation which was a principal supplier of such equipment in the Galveston area. The 21 items or products making up the unassembled scaffold rented by Har-Con from Rourke were listed on a receipt signed by Har-Con's superintendent. Above his signature were the words: "Received the above in good order subject to the terms and conditions on reverse side." On the back of the receipt were various terms relating to title, use, payment for destruction or loss, repossession, indemnity against claims of other parties, and a provision reading: "LESSEE agrees that use of the leased equipment shall be construed as an absolute acknowledgment by LESSEE that when delivered to LESSEE by COMPANY the equipment was in good order and repair, was properly erected and was in all respects adequate, sufficient and proper for the purpose for which it was intended."

The scaffold boards are the only products complained of in this case, and that complaint goes solely to the absence therefrom of devices which would have rendered them safer for use as scaffold boards.

---

1. The evidence indicates that cleats are usually produced out of 2″ x 4″ lumber by cutting strips equal to the widths of the scaffolds boards so that they may be nailed across the underneath sides of both ends of the scaffold boards to prevent them from slipping on the steel scaffold frames. To equip the boards in question with cleats would have required eight of such 2″ x 4″ strips.

Heretofore this Court has spoken of the doctrine of strict liability as being applicable when the product itself is "in a defective condition" and "unreasonably dangerous" to the user. *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.Sup.1969); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.Sup.1967). See also *Metal Window Products Co. v. Magnusen,* 485 S.W.2d 355 (Tex.Civ.App.1972, writ ref. n. r. e.) and *Restatement (Second) of Torts* § 402A (1965). In my opinion, both of these essentials are absent as a matter of law in this case. It is undisputed that the products in this case, the scaffold boards delivered by Rourke Rental, were in good condition. There is no allegation or evidence that these products were in themselves defective. In upholding the judgment on the finding that failure to affix other products (cleat-type devices) on the scaffold boards rendered them defective, the Court gives no significance to the undisputed evidence that the boards and cleat devices are separate products, each being a component of scaffolding equipment which can be rented the same as frames, braces, and other components; that the lessor and party responsible for assembling and erecting the scaffold in question was Har-Con, whose employees did in fact assemble and erect it; and that the absence of cleats on the boards was open and obvious to the superintendent and employees of Har-Con and to any casual observer at the time the boards were delivered to Har-Con.

It is also undisputed that some contractors in the Galveston area use scaffold boards without cleats; that Har-Con rented scaffold boards without cleats from Rourke Rental on numerous previous occasions; that during the past 15 years Rourke Rentals had not rented scaffold boards with cleats; and that if cleats were added by Rourke there would have been an additional charge for them.

What if Har-Con had specifically stated in its order that it wanted scaffold boards without cleats? Would Rourke Rental then be liable to Har-Con employees under the doctrine of strict liability if it furnished the scaffold boards as directed by Har-Con? Surely not. Yet that is precisely the effect of the situation which exists in this case. There is no evidence that Har-Con ordered boards with cleats. The boards were actually delivered in sound condition by Rourke Rental. No defective conditions having been shown in the products as ordered and delivered, recovery upon the doctrine of strict liability should not be permitted.

Further, the absence of cleats on the scaffold boards was open and obvious to the casual observer at the time of their delivery by Rourke to Har-Con. The condition of the boards was not in any manner concealed. Under such circumstances the boards should not, as a matter of law, be regarded as unreasonably dangerous. The dissenting opinion of Justice Evans in the court of civil appeals adequately deals with this additional reason why strict liability is inapplicable. I agree with his opinion.

STEAKLEY and DENTON, JJ., join in this dissent.

