MEMORANDUM OPINION

No. 04-05-00447-CV

Dorothy EDMONDS,
Appellants

v.

Kenneth CAILLOUX,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 04-46-B
Honorable Emil Karl Prohl, Judge Presiding
 
Opinion by:    Sandee Bryan Marion, Justice
 
Sitting:            Catherine Stone, Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
 
Delivered and Filed:   February 22, 2006

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

            In the underlying litigation, Dorothy Edmonds sued Kenneth Cailloux, J.P. Morgan Chase
Bank as trustee of Kathleen Cailloux’s revocable trust, Kathleen Cailloux, and Kathleen Cailloux
as beneficiary of the revocable trust for damages resulting from injuries Dorothy Edmonds suffered
when Kenneth’s dog, Fritz, ran by her and allegedly knocked her down.
            Ms. Edmonds was hired to take care of Kenneth’s mother, Kathleen Cailloux. Ms. Edmonds
provided around the clock home health care to Ms. Cailloux, who suffers from Alzheimer’s disease. 
Shortly after Ms. Edmonds began working in Ms. Cailloux’s home, Kenneth brought his Doberman
Pinscher, Fritz, to Ms. Cailloux’s home. Ms. Edmonds claims Fritz had a tendency to bite, chase,
and knock down people. Ms. Edmonds also claims both her and her son were bitten by Fritz and
these bites were reported to Kenneth. On August 31, 2001, while Ms. Edmonds was walking in the
house, Fritz allegedly ran by Ms. Edmonds, knocking her to the ground. Ms. Edmonds claims she
landed on her back and twisted her knee. Ms. Edmonds asserted claims for negligence and strict
liability. Kenneth filed a no-evidence motion for summary judgment on Ms. Edmonds’ claims,
which the trial court granted without stating its grounds.


 
STANDARD OF REVIEW
            We review a no-evidence summary judgment de novo by construing the record in the light
most favorable to the respondent and disregarding all contrary evidence and inferences. Reynosa v.
Huff, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). A party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof at trial.
Tex. R. Civ. P. 166a(i). A no-evidence summary judgment motion is improperly granted when the
respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of
material fact. Id.; Gomez v. Tri City Cmty. Hosp., Ltd., 4 S.W.3d 281, 283 (Tex. App.—San Antonio
1999, no pet.). More than a scintilla of evidence exists if the evidence would allow reasonable and
fair-minded people to differ in their conclusions. Forbes, Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists if the evidence is so weak as
to do no more than create a mere surmise or suspicion of a fact. Id.
STRICT LIABILITY
            In her first issue, Ms. Edmonds asserts the trial court erred in granting summary judgment
on the issue of strict liability because Kenneth exposed her to an animal with dangerous propensities,
which caused her injuries. To recover on a claim of strict liability for injury by a dangerous
domesticated animal, a plaintiff must prove: (1) defendant was the owner or possessor of the animal;
(2) the animal had dangerous propensities abnormal to its class; (3) defendant knew or had reason
to know the animal had dangerous propensities; and (4) those propensities were a producing cause
of plaintiff’s injury. Allen ex rel. B.A. v. Albin, 97 S.W.3d 655, 660 (Tex. App.—Waco 2002, no
pet.). In his motion for summary judgment, Kenneth did not contest that he is the owner of the dog;
instead he asserted there is no evidence of any other element of Ms. Edmonds’ strict liability claim. 
            The second and third elements of a strict liability claim require Ms. Edmonds to prove that
Fritz had dangerous propensities abnormal to its class and that Kenneth knew or had reason to know
of Fritz’s dangerous propensities. During Ms. Edmonds’ deposition, she testified that Kenneth
brought Fritz over to Ms. Cailloux’s home because Fritz snapped at Kenneth’s wife and she “told
him it was either the dog or her.” When Kenneth introduced Fritz into Ms. Cailloux’s home he
warned Ms. Edmonds that the dog would run through the house. Also, Kenneth would watch Fritz
run through the house and comment, “Boy, that dog is crazy.” Ms. Edmonds testified that Fritz had
knocked her down on two previous occasions and that she told Kenneth about the first occasion. She
also testified that if Fritz was looking out the window and saw a bird or squirrel, he would go
“bizzerk [sic].” Additionally, she stated that Fritz was unpredictable, hyperactive, and was “just a
vicious dog.” Ms. Edmonds testified that she was “frightened for [her] own safety.” Ms. Edmonds
attached additional evidence to her response to Kenneth’s summary judgment including a copy of
her medical records and Fritz’s records from the Creatures Animal Clinic. Fritz’s veterinary record
states, “Dog gets excited when people @ door or squirrels outside–goes into frenzy
(unreadable)...went thru [sic] training a year ago (unreadable)...wants to try Prozac.”
            According to the Restatement (Second) of Torts:
(1) A possessor of a domestic animal that he knows or has reason to know has
dangerous propensities abnormal to its class, is subject to liability for harm done by
the animal to another, although he has exercised the utmost care to prevent it from
doing the harm.
(2) This liability is limited to harm that results from the abnormally dangerous
propensity of which the possessor knows or has reason to know. 
 
Restatement (Second) of Torts § 509 (1977).
            A relevant illustration states: 
A keeps a dog in his apartment on the second floor. A knows that the dog is in the
habit of rushing at the window and leaning out of it in order to bark at pedestrians
passing below. The dog rushes to the window to bark at B, loses its footing, and falls
on B and injures him. A is subject to liability to B under [Section 509, Harm Done
By Abnormally Dangerous Domestic Animals]. 
 
Id. illus. 2. 
Additionally, “If the possessor knows that his dog has the playful habit of jumping up on visitors,
he will be liable without negligence when the dog jumps on a visitor, knocks him down and breaks
his hip.” Id. cmt. i.
            We find that Ms. Edmonds has produced more than a scintilla of evidence that would allow
reasonable and fair-minded people to differ in their conclusions about whether Fritz had dangerous
propensities and whether Kenneth knew or had reason to know of the propensities. Forbes, 124
S.W.3d at 172; see also Allen, 97 S.W.3d at 664 (finding statements by the dog owner “that the dog
had knocked [the owner] down on occasion and the dog was ‘ferocious,’ ‘mean,’ and ‘bad’”
produced more than a scintilla of evidence about whether the dog had dangerous propensities). 
            The fourth element of a strict liability claim requires Ms. Edmonds to prove that Fritz’s
dangerous propensities were a producing cause of her injuries. A “producing cause” is a contributing
cause that, in a natural sequence, produces the plaintiff’s injury. Rourke v. Garza, 530 S.W.2d 794,
801 (Tex. 1975). In her deposition, Ms. Edmonds testified that she fell because Fritz “knocked [her]
legs out from under [her]” and “knocked [her] off balance.” Ms. Edmonds described that she “fell
like almost in a sitting position,” and her “right leg went, kind of, in the back...[she] felt a jam...like
a knife or something was sticking [her]...on her tail end.” She also testified that her knee surgery in
2004 was directly attributable to Fritz knocking her down. In addition, Ms. Edmonds’ medical
records show that she was treated for a back injury and she attributed much of her pain to Fritz
knocking her down. We find that Ms. Edmonds’ testimony and medical records are more than a
scintilla of evidence to show that Fritz’s knocking Ms. Edmonds down was a “contributing cause,
which in a natural sequence,” produced Ms. Edmonds’ injuries. Rourke, 530 S.W.2d at 801. 
            After reviewing all of the summary judgment evidence, we find that Ms. Edmonds has raised
a fact issue on all of the challenged elements. Tex. R. Civ. P. 166a(i). Thus, we find that the trial
court erred by rendering summary judgment in favor of Kenneth on Ms. Edmonds’ strict liability
claim. 
 
 
NEGLIGENCE 
            In her second issue, Ms. Edmonds claims the trial court erred in granting summary judgment
on her negligent handling of an animal claim because Kenneth had a duty to Ms. Edmonds, as her
employer, to provide a safe workplace and he breached that duty, which caused her injury. To
recover on a claim of negligent handling of an animal, a plaintiff must prove: (1) defendant was the
owner or possessor of an animal; (2) defendant owed a duty to exercise reasonable care to prevent
the animal from injuring others; (3) defendant breached that duty; and (4) defendant’s breach
proximately caused plaintiff’s injury. Allen, 97 S.W.3d at 660. 
            Kenneth does not challenge he owned the dog, but contends there is no evidence he owed a
duty to Ms. Edmonds, he breached that duty, or his breach proximately caused her injuries. 
Specifically, Kenneth contends Ms. Edmonds previously asserted in her original petition, deposition,
and responses to requests for disclosure that Kathleen Cailloux or Kathleen Cailloux’s trust was her
employer, and therefore, she cannot now take the position that Kenneth was her employer. In
response to Kenneth’s motion for summary judgment, Ms. Edmonds claims that, “[she] was hired
by Defendant Kenneth Cailloux...[and] as an employer, Defendant Kenneth Cailloux owed a duty
to Plaintiff to provide a safe place and safe conditions in which she may work.” However, there is
no evidence that Kenneth was Ms. Edmonds’ employer. In Ms. Edmonds’ deposition she refers
multiple times to her employer as Kathleen Cailloux. In response to the question, “Who were you
employed by?,” Ms. Edmonds stated “Mrs. Cailloux.” Later in the deposition, Ms. Edmonds was
asked, “So, as far as who your employer was, that was Kathy Cailloux?,” she responded, “Kathleen
Cailloux...Uh-huh.” Ms. Edmonds was asked a question concerning her pay and whether she “got
it from one of the banks,” and she responded, “[F]rom Mrs. Cailloux...It was from her trust fund.” 
Finally, Ms. Edmonds was asked, “And Ken Cailloux didn’t employ you, he wasn’t your boss, was
he?,” to which she responded, “I was hired by Kathleen Cailloux.” 
            Although Ms. Edmonds relies on the employer-employee relationship to confer a duty on
Kenneth, the evidence she relies on indicates Kathleen Cailloux was her employer. Because Ms.
Edmonds was required to show that Kenneth owed her a duty, and there is no such showing here,
we conclude the trial court did not err in granting the no-evidence summary judgment on Ms.
Edmonds’ negligence claim.
CONCLUSION
            We affirm the trial court’s judgment as to the negligence claim and reverse the trial court’s
judgment as to the strict liability claim and remand the cause for further proceedings.
 
Sandee Bryan Marion, Justice